IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

KEYES LAW FIRM, LLC
111 S. Calvert Street                    *
Suite 2700
Baltimore, MD  21202                     *

      Plaintiff                          *

v.                                       *       Case No.: _____

NAPOLI BERN RIPKA SHKOLNIK, LLP          *
400 Broadhollow Road
Suite 305                                *
Melville, NY  11747
                                         *

AND                                      *
                                         *
NAPOLI BERN, LLP
350 Fifth Avenue                         *
Suite 7413
New York, NY  10118                      *

      SERVE ON:                          *
      Marc Jay Bern, LLP
      Napoli Bern, LLP                   *
      350 Fifth Avenue
      Suite 7413                         *
      New York, NY  10118
                                         *

AND                                      *
                                         *
NAPOLI, BERN & ASSOCIATES, LLP
3500 Sunrise Highway                     *
Great River, NY  11739
                                         *

      SERVE ON:
      Marc Jay Bern                      *
      116 Broadway
      New York, NY  10006                *

AND                                      *

NAPOLI BERN RIPKA, LLP                   *

400 Broadhollow Road                    *
Suite 305
Melville, NY  11747                     *

      SERVE ON:              *
      National Registered Agents, Inc.
      111 Eighth Avenue       *
      New York, NY 10011
                        *

AND
                        *

NAPOLI BERN RIPKA SHKOLNIK
& ASSOCIATES, LLP           *
400 Broadhollow Road
Suite 305                       *
Melville, NY  11747
                        *

      SERVE ON:
      C T Corporation System   *
      111 Eighth Avenue
      New York, NY  10011     *

AND                        *

LAW OFFICES OF NAPOLI BERN, LLP   *
350 Fifth Avenue
Suite 7413                    *
New York, NY  10118
                        *

AND
                        *

LAW OFFICES OF NAPOLI BERN
RIPKA & ASSOCIATES LLP        *
350 Sunrise Highway
Suite T-207                   *
Great River, NY  11739
                        *

AND
                        *

LAW OFFICES OF NAPOLI BERN
RIPKA SHKOLNIK LLP          *
350 Fifth Avenue
Suite 350                      *
New York, NY  10118
                        *

AND

LAW OFFICES OF NAPOLI BERN RIPKA            *
SHKOLNIK & ASSOCIATES LLP
350 Fifth Avenue                            *
Suite 350
New York, NY  10118                         *

AND                                         *

NAPOLI, KAISER, BERN & ASSOCIATES, LLP      *
3500 Sunrise Highway
Suite T207                                  *
Great River, NY  11739
                                            *
AND
                                            *
PASTERNACK TILKER NAPOLI BERN LLP
25 Newbridge Road                           *
Suite 203
Hicksville, NY  11801                       *

AND                                         *

NAPOLI SHKOLNIK PLLC                        *
250 Park Ave.
Suite 7045                                  *
New York, NY  10177
                                            *
AND
                                            *
NAPOLI LAW PLLC
1985-4 Cedar Swamp Road                     *
Brookville, NY  11545
                                            *
AND
                                            *
PAUL NAPOLI LAW PLLC
1985-4 Cedar Swamp Road                     *
Brookville, NY  11545
                                            *
AND
                                            *
BERN RIPKA LLP
60 East 42nd Street                         *
New York, NY  10165
                                            *

AND                                                    *

MARC J. BERN & PARTNERS LLP
60 East 42nd Street                                    *
Suite 950
New York, NY  10165                                    *

AND                                                    *

MARC JAY BERN                                          *
Marc J. Bern & Partners LLP
60 East 42nd Street                                    *
Suite 950
New York, NY  10165                                    *

AND                                                    *

PAUL J. NAPOLI                                         *
Napoli Shkolnik PLLC
250 Park Ave.                                          *
Suite 7045
New York, NY  10177                                    *

    Defendants.                                        *

*     *     *     *     *     *     *     *     *     *     *     *

## COMPLAINT

Plaintiff Keyes Law Firm, LLC, by its undersigned counsel, hereby sues defendants

Napoli Bern Ripka Shkolnik, LLP, Napoli Bern, LLP, Napoli, Bern & Associates, LLP, Napoli

Bern Ripka, LLP, Napoli Bern Ripka Shkolnik & Associates, LLP, Law Offices of Napoli Bern,

LLP, Law Offices of Napoli Bern Ripka & Associates LLP, Law Offices of Napoli Bern Ripka

Shkolnik LLP, Law Offices of Napoli Bern Ripka Shkolnik & Associates LLP, Napoli, Kaiser,

Bern & Associates, LLP, Pasternack Tilker Napoli Bern LLP, Napoli Shkolnik PLLC, Napoli

Law PLLC, Paul Napoli Law PLLC, Bern Ripka, LLP, Marc J. Bern & Partners LLP, Marc Jay

Bern, and Paul J. Napoli for an accounting, declaratory judgment, breach of contract,  unjust

enrichment, and a constructive trust, and in support states:

## PREFATORY STATEMENT

1.      Paul J. Napoli, Esquire is a lawyer with a nationwide plaintiffs' practice in mass-tort and class-action matters.  According to his firm's promotional materials, his firm maintains offices around the country and has recovered billions of dollars on behalf of clients in asbestos-related claims, diet-drug claims, and other toxic-tort claims.  Mary H. Keyes, Esquire is a Maryland-based lawyer and the principal of Keyes Law Firm, LLC, a firm that represents clients in asbestos-related injury claims.  Mr. Napoli's firm has served (and continues to serve) as lead litigation counsel for thousands of Ms. Keyes's asbestos-injury clients.  The joint representation of these clients is governed by association agreements pursuant to which Keyes Law Firm, LLC is to receive an agreed-upon portion of the contingency-fees from monetary recoveries (administrative settlements, settlements arising out of litigation, and trial awards) that the clients have received (and continue to receive) in connection with the clients' asbestos-related injury claims.  Each of the clients expressly consented to the joint representation and contingency-fee arrangement expressed in the association agreement governing his or her claims.  Keyes Law Firm, LLC has brought this lawsuit because Mr. Napoli, Mr. Bern, and their firms have failed to remit the agreed-upon payments to Keyes Law Firm, LLC.  In this action, Keyes Law Firm, LLC seeks, *inter alia*, an accounting from Mr. Napoli, Mr. Bern, and their law firms for all sums due Keyes Law Firm, LLC and monetary damages.

## PARTIES

2.      Plaintiff Keyes Law Firm, LLC ("KLF") is a law firm in Baltimore City, Maryland.  Its principal is Mary H. Keyes, Esquire ("Ms. Keyes").  KLF focuses its practice on the representation of individuals with asbestos-related diseases.

3.      Defendant Napoli Bern Ripka Shkolnik, LLP ("NBRS") is a law firm, the equal partners of which are Defendants Paul J. Napoli ("Mr. Napoli") and Marc J. Bern ("Mr. Bern"). Mr. Napoli and Mr. Bern each receive 50% of the profits of this law firm.  NBRS operated a law office or otherwise employed an NBRS lawyer in Baltimore City during the events described below.

4.      Mr. Napoli is a citizen of the State of New York, a practicing lawyer and a founding partner and principal of NBRS and the other firms that comprise the Partnership (defined below).

5.      Mr. Bern is a citizen of the State of New York, a practicing lawyer and a founding partner and principal of NBRS and the other firms that comprise the Partnership (defined below).

6.      Defendant Napoli Bern, LLP ("NB") is a law firm based in New York, the equal partners of which are Mr. Napoli and Mr. Bern.  Mr. Napoli and Mr. Bern each receive 50% of the profits of this law firm.

7.      Defendant Napoli, Bern & Associates, LLP ("NB&A") is a law firm based in New York, the equal partners of which are Mr. Napoli and Mr. Bern.  Mr. Napoli and Mr. Bern each receive 50% of the profits of this law firm.

8.      Defendant Napoli Bern Ripka, LLP ("NBR") is a law firm based in New York, the equal partners of which are Mr. Napoli and Mr. Bern.  Mr. Napoli and Mr. Bern each receive 50% of the profits of this law firm.

9.      Defendant Napoli Bern Ripka Shkolnik & Associates, LLP ("NBRS&A") is a law firm based in New York, the equal partners of which are Mr. Napoli and Mr. Bern.  Mr. Napoli and Mr. Bern each receive 50% of the profits of this law firm.

10.     Defendant Law Offices of Napoli Bern, LLP ("LONB") is a law firm based in New York, the equal partners of which are Mr. Napoli and Mr. Bern.  Mr. Napoli and Mr. Bern each receive 50% of the profits of this law firm.

11.     Defendant Law Offices of Napoli Bern Ripka & Associates LLP ("LONBR&A") is a law firm based in New York, the equal partners of which are Mr. Napoli and Mr. Bern.  Mr. Napoli and Mr. Bern each receive 50% of the profits of this law firm.

12.     Defendant Law Offices of Napoli Bern Ripka Shkolnik LLP ("LONBRS") is a law firm based in New York, the equal partners of which are Mr. Napoli and Mr. Bern.  Mr. Napoli and Mr. Bern each receive 50% of the profits of this law firm.

13.     Defendant Law Offices of Napoli Bern Ripka Shkolnik & Associates LLP ("LONBRS&A") is a law firm based in New York, the equal partners of which are Mr. Napoli and Mr. Bern.  Mr. Napoli and Mr. Bern each receive 50% of the profits of this law firm.

14.     Defendant Napoli, Kaiser, Bern & Associates, LLP ("NKBA") is a law firm based in New York, the equal partners of which are Mr. Napoli and Mr. Bern.  Mr. Napoli and Mr. Bern each receive 50% of the profits of this law firm.

15.     Defendant Pasternack Tilker Napoli Bern LLP ("PTNB") is a law firm based in New York, the equal partners of which are Mr. Napoli and Mr. Bern.  Mr. Napoli and Mr. Bern each receive 50% of the profits of this law firm.

16.     NBRS, NB, NB&A, NBR, NBRS&A, LONB, LONBR&A, LONBRS, LONBRS&A, NKBA, and PTNB (collectively, the "Partnership") are the prior forms of Defendants Napoli Shkolnik PLLC (identified below), Napoli Law PLLC (identified below), Paul Napoli Law PLLC (identified below), Bern Ripka, LLP (identified below), and Marc J. Bern & Partners LLP (identified below).  Each of the defendant entities comprising the

Partnership trades as, does business as, and is known as each of the other entities comprising the Partnership. Indeed, Mr. Napoli has described these entities as the "Napoli Bern family of law firms." On a 50-50 basis, Mr. Bern and Mr. Napoli control and operate the Partnership and each of the defendant entities that comprise the Partnership. Mr. Bern and Mr. Napoli have received and derived, and they continue to receive and derive, profits, money, and other beneficial interests from the Partnership.

17.     Defendant Napoli Shkolnik PLLC ("Napoli Firm") is a law firm based in New York with offices in various other locations throughout the United States. The Napoli Firm operated a law office in Baltimore City during the events described below. Mr. Napoli controls and operates the Napoli Firm. The Napoli Firm continues to perform work in and derive business from Maryland.

18.     Defendant Napoli Law PLLC ("Napoli Law") is a law firm based in New York. Mr. Napoli controls and operates Napoli Law.

19.     Defendant Paul Napoli Law PLLC ("PN Firm") is a law firm based in New York. Mr. Napoli controls and operates the PN Firm. The Napoli Firm, Napoli Law, and the PN Firm are collectively referred to as the "Napoli Firms."

20.     Defendant Bern Ripka LLP ("Bern Firm") is a law firm based in New York. Mr. Bern controls and operates the Bern Firm.

21.     Defendant Marc J. Bern & Partners LLP ("MJB&P") is a law firm based in New York. Mr. Bern controls and operates MJB&P. The Bern Firm and MJB&P are collectively referred to as the "Bern Firms."

## VENUE AND JURISDICTION

22.     This Court has jurisdiction under 28 U.S.C. § 1332 because KLF is not a citizen of the same state as any defendant and the amount in controversy exceeds $75,000.

23.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTS

### A.     Association and Fee-Sharing Arrangements

24.     KLF focuses its practice on representing clients with mesothelioma, lung cancer, or other malignancies caused by exposure – usually in workplace settings many years ago – to asbestos-containing products and/or equipment requiring or calling for the use of asbestos-containing products.

25.     This action relates to the claims of 2,174 such clients ("Subject Clients") against various manufacturers and suppliers of asbestos-containing products and/or equipment requiring or calling for the use of asbestos-containing products ("Asbestos Defendants").  The Subject Clients are identified on the chart that is attached as Exhibit 1.[1]

26.     Another law firm ("Bankruptcy Firm") referred the Subject Clients to KLF.  The Bankruptcy Firm is an out-of-state law firm that concentrates its practice in the representation of people injured from exposure to asbestos-containing products.  Pursuant to the terms of the

---

[1]In addition to identifying the name of each Subject Client, Exhibit 1 also contains information of a private nature.  Consistent with its professional obligation to maintain client confidences and to avoid disclosing private or sensitive information, KLF has filed Exhibit 1 in a sealed envelope subject to a motion to seal pursuant to Fed.R.Civ.P. 5.2, which accompanies or will soon follow the filing of this complaint.  In this complaint, to the extent it is necessary to identify a specific Subject Client, rather than identify him or her by name, KLF will identify the person by reference to the row number on the Exhibit 1 chart that corresponds to his or her name.  For ease of reference and in accordance with Exhibit 1's numbering system, the first listed person is referred to as "Subject Client No. 1," the second listed person as "Subject Client No. 2," and so on through "Subject Client No. 2,174."

referral arrangement between the Bankruptcy Firm and KLF, the Bankruptcy Firm represented

the Subject Clients in their injury claims against various asbestos companies that had filed for

bankruptcy protection ("Bankruptcy Claims").  In this regard, as a matter of background, during

the past several decades, in response to large numbers of lawsuits and claims against them, many

manufacturers and suppliers of asbestos-containing products and/or equipment requiring or

calling for the use of asbestos-containing products filed for bankruptcy protection.  Through the

bankruptcy process, settlement trusts (typically funded with the proceeds of insurance policies)

were created to administratively process and pay valid claims of asbestos-injury claimants.

27.     Also under the referral arrangement between the Bankruptcy Firm and KLF, the

Bankruptcy Firm represented the Subject Clients in connection with Bankruptcy Claims and

KLF represented the Subject Clients in connection with their claims against the various other

Asbestos Defendants that had not filed bankruptcy ("Litigation Claims").

28.     As the volume of referrals from the Bankruptcy Firm to KLF increased over time,

KLF, in turn, developed relationships with other plaintiffs' firms with whom KLF entered into

association agreements for the handling of cases that KLF had received originally from the

Bankruptcy Firm.  One such firm was NBRS, through its principals, Mr. Napoli and Mr. Bern.

29.     This action and the claims asserted below relate to 2,174 Subject Clients the

Bankruptcy Firm originally referred to KLF and for whom KLF, in turn, entered into association

agreements with NBRS in connection with the Litigation Claims.

30.     In general, with respect to the 2,174 Subject Clients, KLF and NBRS entered into

an Association Agreement on the dates identified on Exhibit 1; with respect to any client for

whom an association agreement was not signed, KLF and NBRS entered into an Association

Agreement reflecting the same terms as the written Association Agreements either verbally or

through their course of conduct, or both.  For ease of reference, KLF refers to individual

Association Agreements in accordance with Exhibit 1's numbering system, as follows: "AA1"

(as to Subject Client No. 1), "AA2" (as to Subject Client No. 2), "AA3" (as to Subject Client No.

3) and so on through "AA2,174" (as to Subject Client No. 2,174).  Each  written Association

Agreement is in the form of a letter from Ms. Keyes to Mr. Napoli (in addition to Mr. Napoli, the

letters were sometimes also addressed to Mr. Bern and their colleague Marc Willick).  Except

with respect to the name of the individual Subject Client identified in the Association Agreement

and the dates on which they were entered, the Association Agreements are effectively the same

in form and substance, and each such Association Agreement was countersigned by Mr. Napoli

or Mr. Bern on behalf of their firm, NBRS.  In addition, certain of the Association Agreements,

including those related to Subject Client Nos. 48, 323, 1595, and 1928, were countersigned by

Marc Willick, a solo practitioner in Los Angeles to whom KLF referred cases; shortly after KLF

referred Mr. Willick these cases, he joined NBRS, taking with him the cases that KLF had

previously referred to him when he was a solo practitioner.  Accordingly, the terms of the

Association Agreements signed by Mr. Willick apply to NBRS's representation of Subject Client

Nos. 48, 323, 1595, 1928.  Similarly, as to the Association Agreements related to Subject Client

Nos. 70, 95, 187, 335, 406, 455, 634, 718, 1173, 1272, 1396, 1897, and 2172, KLF entered into

an Association Agreement with Michael P. Joyce, who then associated with NBRS.  NBRS was

aware of and undertook the representation in these cases subject to KLF's involvement in these

cases and expressly agreed to remit KLF's share of any recovery in these cases through Mr.

Joyce.  Accordingly the terms of the Association Agreements in the cases for Subject Client Nos.

70, 95, 187, 335, 406, 455, 634, 718, 1173, 1272, 1396, 1897, and 2172 apply to NBRS and

require NBRS to remit KLF's share of any recovery in those cases.

31.     An exemplar Association Agreement in redacted format is attached as <u>Exhibit 2</u>.

32.     Because a typical Subject Client was exposed to many different kinds and brands of asbestos-containing products, and/or equipment requiring or calling for the use of asbestos-containing products, at different locations during his or her lifetime, each Subject Client had potential claims against multiple Asbestos Defendants.  In this regard, a typical Subject Client might have claims against approximately 20 or so different Asbestos Defendants.

33.     Pursuant to the Association Agreements, NBRS became responsible for handling the Litigation Claims of the Subject Clients in the jurisdictions applicable to each client's claim.  KLF served as liaison counsel between the Bankruptcy Firm and NBRS, taking responsibility for, among other things, consistency between assertions made (*e.g.*, concerning product identification) by the Subject Client in connection with the Bankruptcy Claims and those made in connection with the Litigation Claim.  Moreover, KLF handled other responsibilities, including communications with and responding to inquiries from the Subject Clients regarding the status of claims and other client-relation issues, providing documents to NBRS to assist in the litigation, and providing documents to the Bankruptcy Firm to assist in the filing of Bankruptcy Claims.

34.     The Association Agreements set forth the following contingency fee-sharing arrangement applicable to any recoveries on behalf of a Subject Client from a Litigation Claim:

> The underlying contract in the case provides for a 40% contingency agreement,[2] with fees being recovered before costs, unless otherwise specified.  In accordance with our agreement, the [Bankruptcy Firm] will retain 25% of attorneys' fees derived from any settlements or verdicts.  As to the remaining 75% of attorneys' fees, [KLF] will retain 20% of those fees, and your firm will retain 80%.  The [Bankruptcy Firm] is submitting all bankruptcy claims and will retain 100% of the attorneys' fees derived from those claims.

---

[2] In certain of the Subject Clients' cases, the underlying contract with the client provided for a 33 1/3% contingency arrangement.  The terms of KLF's Association Agreements with NBRS did not, however, vary, and the percentages of the recovery to which the Bankruptcy Firm and KLF were entitled remained constant regardless of the underlying contingency fee agreement with the client.

35.     Based on the foregoing percentage shares, in connection with any gross recovery that a Subject Client received in a Litigation Claim against an Asbestos Defendant, the Bankruptcy Firm would receive a contingency fee of 10%; KLF would receive a contingency fee of 6%; and NBRS would receive a contingency fee of 24%.

36.     Under the Association Agreements, upon a recovery, NBRS was required to remit to KLF a single check representing the total of KLF's share and the Bankruptcy Firm's share. After KLF received that payment, KLF would then disburse to the Bankruptcy Firm its share of the fee.

37.     In representing the Subject Clients, Ms. Keyes explained to each Subject Client the nature of the prospective relationship between KLF and NBRS and advised him or her how the fee-sharing arrangement between the firms would work.  After giving KLF his or her verbal consent to the joint representation, each Subject Client formally confirmed his or her consent to the foregoing joint-representation and fee-sharing arrangements by executing a formal written consent document.

38.     With respect to the Subject Clients, the first Association Agreement was entered on January 24, 2011.  As demonstrated in Exhibit 1, KLF and NBRS entered into more than 2,400 such agreements.  KLF sent the last Association Agreement to NBRS on February 19, 2014.

39.     The Subject Clients have received one or more recoveries on Litigation Claims, but KLF has not received the payments due KLF under the Association Agreements as to each such recovery.  Exhibit 1 indicates those payments that KLF has received to date.  The payments identified on Exhibit 1 represent a fraction of the total payments due KLF for each Subject Client on Exhibit 1.

B.      **Mr. Napoli and Mr. Bern Separate**

40.     In 2014, after many years of practicing law in partnership together, Mr. Napoli and Mr. Bern decided to separate.  The separation, which was not amicable, became the subject of litigation and considerable media coverage in New York and elsewhere.

41.     Thereafter, Mr. Napoli founded the Napoli Firms and Mr. Bern founded the Bern Firms.

42.     Ultimately, Mr. Napoli and Mr. Bern reached an agreement concerning how to divide the Partnership's many cases.  As described in a publicly available court record, the cases were separated into numerous categories and sub-categories and, within those categories and sub-categories, cases that were originated by either Mr. Shkolnik (and certain other attorneys) or Mr. Ripka were assigned to the Napoli Firms or the Bern Firms, respectively.  The remaining cases were then numbered and, after a coin toss between the parties, the winner selected either the odd or even numbered cases.  The cases not selected by the winner of the coin toss were then automatically assigned to the other party.  If one party received more or fewer cases than the other due to the automatic assignments, a court-appointed referee would make transfers of randomly assigned cases from the party with the higher number of cases to the party with the lower number of cases so that, in the end, each party would receive an equal number of cases. The agreement further provided that the referee could make an equitable financial adjustment at the end of the process in recognition that a client might exercise the right to continue with someone other than the assigned firm and to account for an unequal realization of legal fees that would otherwise have been effectively shared 50/50 by Mr. Napoli and Mr. Bern.  The foregoing process is hereafter referred to as the "Case Distribution Process."

43.    By virtue of the Case Distribution Process, the assignment of any Subject Client's matter from the Partnership to either Mr. Napoli (or a firm controlled by him, *e.g.*, the Napoli Firms) or Mr. Bern (or a firm controlled by him, *e.g.*, the Bern Firms) became subject to the Association Agreement that was in effect before the assignment among the original parties (the Subject Clients, KLF, and NBRS).  In this regard, because the fee-sharing and distribution arrangements had already been established and agreed upon before the assignment, NBRS, as assignor, could not assign to the assignee firm any right to receive a contingency-fee percentage greater than the percentage established by the Association Agreements.  Likewise, the assignment could not extinguish or otherwise reduce the percentage that KLF was entitled to receive pursuant to the Association Agreements.  Hence, when a Subject Client was assigned to a defendant lawyer or firm, that defendant lawyer or firm, as assignee, took that assignment subject to all pre-existing obligations then in effect, including the obligations to remit to KLF its percentage share of the gross recoveries of the Subject Client.

44.    Despite KLF's good faith efforts (described below), KLF is unable to determine with certainty to which defendant firm each Subject Client was ultimately assigned.  As best as KLF can determine at this time without the benefit of formal discovery and based on admissions by Mr. Napoli, it appears that most, if not all, of the Subject Clients were assigned to Mr. Napoli and the Napoli Firms (or to another defendant entity controlled by Mr. Napoli).  To date, KLF has determined that Mr. Napoli and the Napoli Firms continue to handle a large number of the Litigation Claims of the Subject Clients pursuant to the Association Agreements.  In many of the cases, no docket entry reflects any change in attorney or law firm after the Case Distribution Process.  Indeed, in some cases, court filings related to settlements continued to be signed by NBRS attorneys on behalf of NBRS after the Case Distribution Process.  For example,

demonstrating that the newly formed firms are mere continuations of NBRS, many stipulations of dismissal (which likely resulted from private settlements), were filed by the Napoli Firms' attorneys but signed on behalf of NBRS after the Case Distribution Process took place.  On certain of these filings, "Napoli Kaiser Bern & Associates, LLP" or "Napoli Shkolnik, PLLC" appears at the top of the stipulation of dismissal as the filing entity, while the filing attorney signs the stipulation on behalf of "Napoli Bern Ripka Shkolnik & Associates, LLP."  These instances demonstrate that even the Napoli Firms' own attorneys view and treat the two firms (the Napoli Firms and NBRS) as interchangeable, and did not find it necessary to show any distinction between them to the court on settlement-related filings.

45.     Relatedly, KLF has discovered that, in some cases, attorneys for the Napoli Firms entered their appearances on behalf of many Subject Clients in jurisdictions where those claims were then pending and continued the active prosecution and handling of their Litigation Claims in the same or very similar manner in which they were handled before the Case Distribution Process.

46.     As a result of the Case Distribution Process that Mr. Napoli and Mr. Bern agreed to employ in connection with the assignment of the Subject Clients' claims to Mr. Napoli (or to a firm controlled by him, as KLF believes is the case) or to Mr. Bern (or to a firm controlled by him), all defendants understood and agreed that they would honor the payment obligations owed to KLF pursuant to the Association Agreements.  Further, by virtue of the Case Distribution Process and the payments (albeit sporadic and partial) made to KLF, Mr. Napoli, the Napoli Firms, Mr. Bern, and the Bern Firms manifested an intent to honor the Association Agreements by accepting the benefits of those agreements with knowledge of their terms; in so doing, they adopted, assumed, ratified, succeeded to, and agreed to honor the Association Agreements.

Indeed, all defendants, by express agreement, assumed the obligations to KLF under the

Association Agreements and, further, the facts and circumstances establish an implied

assumption of such obligations.  Likewise, in detailed communications with Subject Clients,

while misrepresenting the fact and amount of remittances made to KLF, the defendants have

affirmatively admitted and recognized that they are obligated and liable to KLF to make the

remittances due KLF under the Association Agreements.  Consequently, all defendants are

obligated and liable to KLF to make the remittances due to KLF under the Association

Agreements.

47.     Alternatively, the entities created after Mr. Napoli and Mr. Bern separated, and

which are currently controlled by Mr. Napoli, the Napoli Firms, Mr. Bern, and the Bern Firms,

are mere continuations of NBRS, because they represent mere changes in form without any

significant changes in substance from NBRS.

48.     For example, in the following six cases filed in the Circuit Court for Baltimore

City, Jason M. Weiner, Esq., a lawyer with NBRS&A filed the initial complaints on behalf of the

plaintiffs.  After the formation of the Napoli Firm, Aaron Graham, Esq., an attorney with the

Napoli Firm, entered his appearance in each of these cases on behalf of the plaintiffs:

- *Anne E. Brown v. AC&R Insulation Co., Inc. et al.*, Case No. 24X13000423 (Cir. Ct. Baltimore City, filed July 24, 2013),

- *Donald J. Cogswell v. 84 Lumber Co., et al.*, Case No. 24X14000184 (Cir. Ct. Baltimore City, filed April 7, 2014),

- *Joseph R. Edelen v. Aamco Tools, a/k/a Hennessy Industries, Inc. et al.*, Case No. 24X12000721 (Cir. Ct. Baltimore City, filed June 8, 2012)

- *James Keller, as Personal Representative for the Estate of Gloria F. Keller v. 84 Lumber Co., et al.*, Case No. 24X13000332 (Cir. Ct. Baltimore City, filed May 10, 2013)

- *John A. Nicholls v. AC&R Insulation Co., Inc. et al.*, Case No. 24X13000720 (Cir. Ct. Baltimore City, filed December 12, 2013)

- *Duane M. Nichols v. Aamco Tools, a/k/a Hennessy Industries, Inc. et al.*, Case No. 24X12000781 (Cir. Ct. Baltimore City, filed July 19, 2013)

49.     Moreover, with the exception of *Brown v. AC&R Insulation Co., et al.*, Mr. Weiner and NBRS&A never withdrew their appearances in these cases.

50.     Consequently, the legal fees generated from the Litigation Claims of the Subject Clients ultimately will be paid to Mr. Napoli and Mr. Bern whatever their arrangement and regardless of the various entities through which the money may flow or be diverted.

51.     As mere continuations of the entities subject to the Association Agreements, the defendants are obligated to KLF to make the remittances due to KLF under the Association Agreements.

52.     With knowledge of the terms and their continuing obligations to KLF under the Association Agreements, Mr. Napoli and Mr. Bern caused the Subject Clients to be assigned and transferred to Mr. Napoli and the Napoli Firms (or to one or more entities controlled by Mr. Napoli) or to Mr. Bern and the Bern Firms (or to one or more entities controlled by Mr. Bern) as a fraudulent attempt to escape liability for the debts owed to the KLF under the Association Agreements.

## C.     Payments to KLF Dwindle and Eventually Cease

53.     After the Napoli-Bern separation, Mr. Napoli remained KLF's point of contact with respect to questions concerning the status of the Litigation Claims of the Subject Clients and of payments due KLF under the Association Agreements.  With the consent, approval, and authority of all defendants, Mr. Napoli assumed that role and served as the agent, representative, and nominee of the other defendants as to communications with KLF concerning the Subject Clients.

54.     Consistent and in accordance with their obligations under the Association Agreements, from time to time the defendants, through Mr. Napoli and the Napoli Firms, caused payments to be made to KLF when certain Subject Clients received recoveries from certain Asbestos Defendants.  But, such payments were sporadic, incomplete, and isolated to a small number of Subject Clients.

55.     During 2016, Ms. Keyes noticed that payments to KLF from the defendants, through Mr. Napoli and the Napoli Firms, began to dwindle and completely discontinue.  Over the course of many months, Ms. Keyes requested, repeatedly, that Mr. Napoli and his firms provide an explanation of the status of the cases and advise Ms. Keyes when the clients and KLF would be paid on the cases that had already settled.  In certain instances, Mr. Napoli and the Napoli Firms made partial or incomplete payments to KLF, and Ms. Keyes made repeated inquiries to understand why the payments were short and when the balance of the amounts due would be paid.

56.     In response to Ms. Keyes's requests in this regard, the defendants (through Mr. Napoli and his employees) were unable or unwilling to provide concrete answers.  Although at times they promised to look into the situation, they never did so in any meaningful or substantive way, and they continued to withhold payments due to KLF, although all the while recognizing that they do in fact owe KLF an obligation to remit payments to KLF pursuant to the Association Agreements.  Frequently, however, Mr. Napoli ignored Ms. Keyes's requests for information. Other times, he offered various excuses for not providing to Ms. Keyes an update on the status of each Subject Client's case (including the status of settlements paid to date and the status of unresolved claims) and for not paying KLF as required under the Association Agreements.

57.     For example, in response to Ms. Keyes's request to identify the Subject Clients who were scheduled for trial, Mr. Napoli promised that he would provide to Ms. Keyes "a trial schedule of remaining cases."  Despite his promise, Mr. Napoli never provided that information.

58.     While the defendants were failing to provide meaningful responses to Ms. Keyes's inquiries or were otherwise ignoring or dodging the inquiries, several of the Subject Clients contacted KLF to find out what was going on with their cases.  Because of Mr. Napoli's and the Napoli Firms' stonewalling, Ms. Keyes was not in a position to give the inquiring Subject Clients information.

59.     The last payment that the defendants made (through the Napoli Firm) to KLF was on October 13, 2016, when the Napoli Firm sent three checks to KLF to cover shortfalls in payments dating back to March 2016 (during the prior seven months, KLF had been pursuing payment of the shortfalls).  There have been no payments of attorneys' fees to KLF since then.

60.     In 2017, Ms. Keyes continued her efforts to obtain information, both from Mr. Napoli directly and from his colleagues.  In response to these requests, Ms. Keyes was told that Mr. Napoli was the only individual able to provide the information she sought and was instructed by Mr. Napoli not to contact anyone else for the information.  When Ms. Keyes followed up with Mr. Napoli, however, he claimed that he did not have access to the information that would enable him to provide a status of the Subject Clients' claims.  Specifically, Mr. Napoli represented that although he was "working on it," "getting information [about settlements of the Litigation Claims] is very difficult" and that "multiple people . . . need to be involved" in getting the "correct information."  Mr. Napoli did not explain why, while representing on the one hand that he was the only one who could provide the information and fees to which KLF is entitled, he, on the other hand, could not access that information.

61.     Mr. Napoli's response made no logical sense.  After all, Mr. Napoli was a principal architect of the Case Distribution Process and the person in control of the firm that purports to represent the Subject Clients.

62.     Moreover, in many, if not most instances, the Napoli Firms had entered their appearance in court proceedings on behalf of those 2,174 clients.  It is, therefore, inconceivable and not credible that Mr. Napoli and the Napoli Firms are unable to know the status of each Subject Client's claim and do not have ready access to such information.  Indeed, in a sworn affidavit that he submitted in a lawsuit in April 2016, Mr. Napoli described, to the penny, the total settlements for a client, the costs related to the settlements, and the amounts paid to the client.  As evidenced by Mr. Napoli's own affidavit, he was able to present that kind of detailed information "[b]ased on a review of our files and settlement database as it relates to the underlying asbestos litigation."  Hence, if Mr. Napoli truly wanted to provide the information to Ms. Keyes, he could easily do so by reference to his files and his settlement database.

63.     Moreover, less than four months after representing to Ms. Keyes that he did not have the ability to garner the information needed to get KLF its fees, Mr. Napoli took steps with respect to the Litigation Claims and Subject Clients that revealed that he did indeed have ready access to the information Ms. Keyes sought.  For example, demonstrating that the Napoli Firms are a mere continuation of NBRS, on June 5 and 7, 2017, Mr. Napoli entered his appearance, substituting for former NBRS attorneys, on nearly all open cases of Subject Clients in Madison County, Illinois.  That Mr. Napoli could enter his appearance on such a large number of cases in two days evidences (1) his intention to continue a seamless representation of the Subject Clients, (2) that Mr. Napoli is well aware of which cases of the Subject Clients remain open and which

cases have settled, and (3) relatedly, that the information Ms. Keyes sought is readily available to Mr. Napoli.

64.     Despite KLF's reasonable efforts to obtain information and KLF's abundant patience in waiting for the defendants to honor the obligations embodied in the Association Agreements, it has become clear that the defendants have been stonewalling KLF.  Simply put, by their obfuscation and their continual failures to provide information on the status of the Subject Clients' cases and their continual failure to pay KLF in accordance with the Association Agreements, it has become evident that the defendants do not intend to honor their contractual obligations to KLF.  Indeed, KLF has since learned that other attorneys have sued one or more defendants for failing to honor similar fee-sharing arrangements.

COUNT 1 – ACCOUNTING
(KLF v. all defendants)

65.     KLF adopts and incorporates by reference into this paragraph as if fully set forth in this paragraph each of the allegations contained in each of the numbered paragraphs of this complaint.

66.     The defendants owed a duty to account to KLF for money due KLF pursuant to the Association Agreements.  NBRS, as the original obligor under the Association Agreements, expressly agreed to remit to KLF a specified share of the settlements received by the Subject Clients and, consequently, became liable to account to KLF for monies owed to KLF and the Bankruptcy Firm pursuant to the contractually agreed-upon fee-sharing arrangement.

67.     Likewise, as explained above, the other defendants became obligated and liable to make distributions to KLF pursuant to the Association Agreements.  As a result, those defendants, as well, became obligated to account to KLF under the Association Agreements. Indeed, on several occasions, on behalf of the defendants Mr. Napoli and the Napoli Firms

represented and promised to KLF that the defendants would fully account to KLF for payments due to KLF.

68.     Alternatively, because Mr. Napoli and the Napoli Firms and Mr. Bern and the Bern Firms and any firms controlled by them are mere continuations of NBRS and/or because the defendants caused the Litigation Claims to be assigned from NBRS in a fraudulent attempt to escape liability for the debts to KLF under the Association Agreements, they became obligated to account to KLF for such debts.

69.     Moreover, all defendants agreed, contemplated, and understood that: the claims that were assigned pursuant to the Case Distribution Process would generate contingency fees; KLF had a contractual right to receive, and had an equitable claim upon, a specified portion of such fees pursuant to the Association Agreements; and in connection with the receipt and handling of the recoveries received by any Subject Client, the defendants were obligated fully and promptly to remit to KLF an amount consisting of KLF's share and the Bankruptcy Firm's share of the recoveries.

70.     Thus, all defendants, by actions, implication, or express agreement, agreed to honor, ratified, adopted, and assumed the obligations owed to KLF.  Consequently, all such defendants owed, and continue to owe, to KLF a duty to account for such fees, whether already received or to be received in the future.

71.     The defendants have received fees in which KLF is entitled to share, and the account books, records, and documents relating to such fees are in the possession of the defendants, who have to date refused to allow KLF to inspect, examine, or otherwise have access to the records.

72.     To date, notwithstanding their obligation to render an accounting, none of the defendants has provided an accounting to KLF.

73.     The mutual accounts as between KLF (on the one hand) and the defendants (on the other hand) and the circumstances are so complicated that, without a full and proper accounting of all fees due KLF based on all settlement funds received by each of the 2,174 Subject Clients and of the status of each Subject Client's recoveries to date, KLF does not have an adequate remedy at law.

74.     The Defendants, through their nominee, agent, and representatives – Mr. Napoli and the Napoli Firms – have repeatedly broken promises to remit payments to KLF and to render an accounting.  They have acted to deceive and stonewall KLF for the purpose of blocking KLF from fully understanding the status of the monetary recoveries by each of the 2,174 Subject Clients.  Consequently, the defendants have acted fraudulently and injuriously toward KLF.

75.     KLF is reasonably concerned that, unless enjoined by an order of this Court, the defendants may attempt to change, alter, or destroy business and other records pertinent to the payments due KLF as described in this complaint and also the defendants' own financial records insofar as they may apply to the subject matter of this lawsuit.

WHEREFORE, KLF demands that this Honorable Court decree, declare, order, and adjudge that:

A.     the defendants immediately provide a full and complete account for all sums currently due and to become due in the future to KLF and the Bankruptcy Firm pursuant to the agreements that are the subject of this action;

B.     the defendants immediately provide a full and complete account for all money recovered by Subject Client Nos. 1 through and including 2,174 and, for each client, an

itemization of all disbursements from any such recovery, including disbursements to the client and for the payment of liens, costs, attorneys' fees, and any other expense;

C.      the defendants immediately provide a full and complete account for all fees paid to or received to date by each defendant based on money recovered by Subject Client Nos. 1 through and including 2,174;

D.      the defendants immediately provide a full and complete account for the status of each Litigation Claim that is the subject of this action;

E.      a money judgment be entered against each defendant, jointly and severally, for the sum found to be due KLF on such accountings, with interest and costs;

F.      the defendants are enjoined from changing, altering, or destroying any records relating to the subject matter of this litigation and to the defendants' financial affairs and operations; and

G.      KLF have such other and further relief as may be just and equitable.

<u>COUNT 2 – DECLARATORY JUDGMENT</u>
(KLF v. all defendants)

76.      KLF adopts and incorporates by reference into this paragraph as if fully set forth in this paragraph each of the allegations contained in each of the numbered paragraphs of this complaint.

77.      This count is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*

78.      There is an actual controversy between the parties.

79.      As explained above, NBRS refuses to remit to KLF its contractual share of the settlements recovered by the Subject Clients.  Likewise, KLF asserts that the remaining defendants have become jointly and severally liable with NBRS as a consequence of their

adoption, ratification, and assumption of the referral-fee obligations under the Association Agreements, and/or as a consequence of the assignments made pursuant to the Case Distribution Process.

80.     Except as set forth in <u>Exhibit 1</u>, the defendants have failed to remit to KLF the payments due to KLF, which consist of KLF's contractual share and the Bankruptcy Firm's contractual share of the recoveries by the Subject Clients that were represented by any of the defendants.

81.     Given the defendants' failure and refusal to honor the fee-distribution obligations of the Association Agreements, antagonistic claims exist between the parties, which indicate – and have resulted in – imminent and inevitable litigation.  Therefore, a controversy between the parties exists that entitles KLF to this Court's declaratory judgment under 28 U.S.C. §§ 2201, *et seq.*

82.     This Court has authority to issue the requested declaratory judgments pursuant to 28 U.S.C. §§ 2201, *et seq.*

83.     This Court's declaratory judgments concerning the parties' rights, interests, liabilities, and damages will terminate these controversies.

WHEREFORE, KLF is entitled to and requests a judgment of this Honorable Court, declaring the rights of the parties as follows:

a.     declare, decree, and adjudge the parties' respective rights and obligations arising out of the Association Agreements pertaining to the Subject Clients;

b.     declare, decree, and adjudge that, for each recovery procured by a defendant on behalf of a Subject Client, such defendant must immediately remit to KLF its share of the recovery pursuant to the Association Agreement pertaining to that Subject Client;

c.      declare, decree, and adjudge that, for each recovery to be procured by a defendant on behalf of a Subject Client, upon such settlement such defendant must immediately remit to KLF its share of the settlement pursuant to the Association Agreement pertaining to that Subject Client;

d.      declare, decree, and adjudge that each defendant must account to KLF for all amounts due to KLF under AA1 through and including AA2,174 and continue to account to KLF for all amounts as they become due under those Association Agreements; and

e.      award KLF such other relief as this Court deems proper and just, including, but not limited to, the relief requested in any of the other counts of this complaint.

## COUNT 3 – BREACH OF ASSOCIATION AGREEMENTS
### (KLF v. NBRS)

84.      KLF adopts and incorporates by reference into this paragraph as if fully set forth in this paragraph each of the allegations contained in each of the numbered paragraphs of this complaint.  In this count, KLF sues NBRS for breaching the Association Agreements.

85.      As explained above, KLF and NBRS entered into an Association Agreement for each of the Subject Clients identified on Exhibit 1.

86.      Under AA1 through and including AA2,174, NBRS agreed and therefore became obligated to pay KLF its share of the gross recoveries previously received or to be received in the future by Subject Client Nos. 1 through 2,174 from any and all Asbestos Defendants against whom each such Subject Client has asserted Litigation Claims, whether in a filed legal action or through a settlement demand or discussion.

87.      For each Subject Client listed on the Exhibit 1 spreadsheet, the spreadsheet reflects whether KLF has received any payments relating to that client and, if so, the amount of such payment.  Except to the extent that KLF may have received any isolated payments as noted

on the <u>Exhibit 1</u> spreadsheet, NBRS has failed to make full and timely payments to KLF as required under AA1 through AA2,174 pertaining, respectively, to Subject Client No. 1 through No. 2,174 even though the Litigation Claims for those clients have resulted in substantial recoveries.

88.     Consequently, NBRS has breached AA1 through AA2,174.

89.     As a direct and proximate result of NBRS's breach of AA1 through AA2,174, KLF has sustained and continues to sustain economic losses and consequential damages, the full amount of which will be proved at trial.

WHEREFORE, KLF demands a judgment exceeding $75,000 against NBRS for the grand total of the amounts due KLF under AA1 through and including AA2,174 to be proved at trial, plus prejudgment interest, post-judgment interest, costs, and attorneys' fees to the extent recoverable under applicable law.

<u>COUNT 4 – BREACH OF ASSOCIATION AGREEMENTS</u>
(KLF v. all defendants (except NBRS))

90.     KLF adopts and incorporates by reference into this paragraph as if fully set forth in this paragraph each of the allegations contained in each of the numbered paragraphs of this complaint.  In this count, KLF sues all defendants (except NBRS) (collectively, "Count 4 Defendants") for breaching AA1 through and including AA2,174.

91.     As explained above, by words, agreements, assignments, conduct, and actions, each of the Count 4 Defendants has adopted, assumed, succeeded to, ratified, undertaken, and/or become bound by the fee-sharing obligation set forth in AA1 through AA2,174.

92.     The Litigation Claims of the Subject Clients have resulted in substantial recoveries.

93.     Except to the extent that KLF may have received any isolated payments as noted on the Exhibit 1 spreadsheet, none of the Count 4 Defendants has paid KLF the amounts due KLF under those Association Agreements.

94.     Therefore, each of the Count 4 Defendants has breached the obligations to make full and timely payments to KLF as required by AA1 through AA2,174.

95.      As a direct and proximate result of the Count 4 Defendants' respective breaches of AA1 through AA2,174, KLF has sustained and continues to sustain economic losses and consequential damages, the full amount of which will be proved at trial.

WHEREFORE, KLF demands a judgment exceeding $75,000 against each Count 4 Defendant, jointly and severally, for the grand total of the amounts due KLF under AA1 through and including AA2,174 to be proved at trial, plus prejudgment interest, post-judgment interest, costs, and attorneys' fees to the extent recoverable under applicable law.

COUNT 5 – UNJUST ENRICHMENT<br>(KLF v. all defendants)

96.     KLF adopts and incorporates by reference into this paragraph as if fully set forth in this paragraph each of the allegations contained in each of the numbered paragraphs of this complaint.  This count is brought in the alternative in the event and to the extent that this Court determines that the obligation of payment owed by any defendant to KLF is not covered by an express contract.

97.     The Litigation Claims of the Subject Clients have resulted in substantial recoveries.  Except as set forth on Exhibit 1, KLF has received no portion of the contingency fees generated from the monetary recoveries of the Subject Clients.  Although KLF has confirmed that there have been monetary recoveries by Subject Clients and although the

defendants have received and are continuing to receive fees and income derived from those recoveries, no portions have been remitted to KLF.

98.     To the contrary, in bad faith the defendants have taken for themselves KLF's money and the money that belongs to the Bankruptcy Firm notwithstanding that the defendants always knew, agreed, appreciated, and understood that they were not entitled to take for themselves the full amount of the contingency fee, but instead were obligated to collect and promptly remit to KLF the agreed-upon percentage shares designated for KLF and the Bankruptcy Firm.  Indeed, through the Subject Clients' written consents – of which the defendants received and/or had actual knowledge – the Subject Clients themselves had authorized KLF to be paid out of the recovered funds specified percentage shares for KLF and the Bankruptcy Firm.

99.     As a consequence of their improper and bad-faith conduct, the defendants have in no uncertain terms stolen or hijacked money that belongs to KLF and the Bankruptcy Firm. Given the close and intertwined relationships of Mr. Napoli, Mr. Bern, NBRS, the Partnership, the Napoli Firms and the Bern Firms generally and more specifically with respect to the Case Distribution Process, each defendant surely understood and appreciated that it was obligated to remit to KLF a specified share of any recovery by a Subject Client.  Thus, to the extent any defendant has received a fee or derived any amount of revenue from any monetary recovery of a Subject Client without KLF's having received its share, substantial and valuable benefits have been conferred on such defendant in the form of money that belongs to KLF and the Bankruptcy Firm.

100.    The defendants appreciate and have knowledge of the benefits they have received to date and stand to continue to receive in the future.

101.     Under the circumstances, it is inequitable and unconscionable for any defendants to have accepted and retained and to continue to accept and retain the benefits without payment and/or remittance to KLF of KLF's share of the value of such benefits.

102.     The defendants are obliged by ties of natural justice and equity to disgorge and pay to KLF that total sum of money representing the percentage shares of all recoveries by the Subject Clients that KLF is entitled to receive for the benefit of itself and for further remittance to the Bankruptcy Firm.

103.     Provided the defendants have preserved their evidence, an accounting, as requested above, will reveal the fees recovered by each defendant in connection with the recoveries by each Subject Client and correspondingly the amount of money each defendant owes to KLF based on the value of the benefits each defendant has unjustly obtained.

WHEREFORE, KLF demands a judgment exceeding $75,000 against each defendant, jointly and severally, in an amount to be proved at trial, plus prejudgment interest, post-judgment interest, costs, and attorneys' fees to the extent recoverable under applicable law.

## COUNT 6 – CONSTRUCTIVE TRUST
(KLF v. all defendants)

104.     KLF adopts and incorporates by reference into this paragraph as if fully set forth in this paragraph each of the allegations contained in each of the numbered paragraphs of this complaint.

105.     As explained above, by virtue of recoveries that were received or will be received in the future by the Subject Clients, the defendants have acquired and will continue to acquire funds that belong to KLF and the Bankruptcy Firm, namely, their percentage shares of those funds as outlined in the Association Agreements.

106.    KLF and the Bankruptcy Firm have a good and equitable claim to and interest in such shares that is superior to any claim or interest that any defendant might attempt to assert. KLF and the Bankruptcy Firm have a higher equitable call on such shares than the defendants.

107.    The circumstances of this action make it inequitable for the defendants to retain the funds that belong to KLF and the Bankruptcy Firm.

WHEREFORE, KLF demands that this Honorable Court:

a.      charge upon each defendant a constructive trust of all funds that such defendant has received or derived (or will in the future receive or derive) as a consequence of any monetary recovery by a Subject Client up to and including the amount of the percentage share that KLF and the Bankruptcy Firm are entitled to receive under the Association Agreement pertaining to such Subject Client;

b.      order each such defendant as constructive trustee to immediately turnover, pay to, and disgorge to KLF all such sums held in the trust imposed pursuant to this count, together with prejudgment interest, costs, and attorneys' fees as recoverable under applicable law; and

c.      award KLF such other relief as this Court deems proper and just.

Respectfully submitted,


 _/s/ David J. Shuster_____
Andrew Jay Graham (Bar No.: 00080)
David J. Shuster (Bar No.: 23120)
Jean E. Lewis (Bar No.: 27562)
Allison Midei (Bar No.: 19860)
KRAMON & GRAHAM, P.A.
One South Street
Suite 2600
Baltimore, Maryland 21202
(410) 752-6030
(410) 539-1269 (fax)

*Attorneys for Plaintiff*
*Keyes Law Firm, LLC*