IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| KEYES LAW FIRM, LLC, | * | |
|---|---|---|
| Plaintiff, | * | |
| | | Civil Action No. RDB-17-2972 |
| v. | * | |
| NAPOLI BERN RIPKA SHKOLNIK, LLP, *et al.*, | * | |
| | * | |
| Defendants. | | |

* * * * * * * * * * * * *

**<u>MEMORANDUM OPINION</u>**

Plaintiff Keyes Law Firm, LLC ("Plaintiff" or "Keyes"), brings this action against Paul J. Napoli, Marc J. Bern, and sixteen law firms (collectively, "Defendants"), alleging that the Defendants have failed to honor their obligations under association agreements related to the referral of asbestos-related litigation. (Compl., ECF No. 1.) Currently pending before this Court is Mr. Napoli and fourteen of the law firms' (collectively, the "Napoli Defendants") Motion to Dismiss for lack of personal jurisdiction, or in the alternative, for failure to state a claim. (ECF No. 26.)[1] The submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the following reasons, the Napoli Defendants' Motion to Dismiss (ECF No. 26) is DENIED.[2]

**BACKGROUND**

The Plaintiff Keyes Law Firm, LLC ("Plaintiff" or "Keyes") brings this action against

---

[1] The other three Defendants, Marc J. Bern and two of the law firms, currently have entries of default against them and have filed a Motion to Set Aside Clerk's Entries of Default. (ECF No. 53.) In their Motion, they assert that they also have the meritorious defense of lack of personal jurisdiction. This Court notes that the same personal jurisdiction analysis outlined here would appear to also apply to the Bern Defendants.

[2] Also pending is the Plaintiff's Motion to File a Surreply in further support of its Opposition to the Motion to Dismiss. (ECF No. 51.) Because this Court denies the Defendants' Motion to Dismiss, this Motion (ECF No. 51) is MOOT.

1

two individuals, Paul J. Napoli ("Mr. Napoli") and Marc J. Bern ("Mr. Bern"), and sixteen law firms. As an overview, Keyes alleges that its principal, Mary Keyes ("Ms. Keyes"), entered into association agreements with Mr. Napoli and Mr. Bern on behalf of their firm Napoli Bern Ripka Shkolnik, LLP ("NBRS") and ten other law firms which collectively make up the "Partnership." After Mr. Napoli and Mr. Bern split as law partners, the Plaintiff alleges that the association agreements were assigned to Mr. Napoli, Mr. Bern, or firms that Mr. Napoli or Mr. Bern formed after their split as partners. Mr. Napoli, the Partnership, and the three firms that Mr. Napoli formed after the split (collectively, the "Napoli Defendants") move to dismiss the Plaintiff's claims. A more detailed description of the parties and background of this case is set forth below.

## I. Relationship of the Parties Prior to 2014

Plaintiff Keyes is located in Baltimore City, Maryland and focuses on representing individuals with asbestos-related diseases. (ECF No. 1 at ¶¶ 1, 2.) Mr. Bern and Mr. Napoli are the founding partners and principals and equal partners of Napoli Bern Ripka Shkolnik, LLP ("NBRS") and ten firms which, combined with NBRS, make up the "Partnership."[3] Mr. Bern and Mr. Napoli are both citizens of New York and all of the firms in the Partnership are based in New York. (*Id.* at ¶¶ 3-21.) The Complaint alleges that each of the firms in the Partnership "trade[] as, do[] business as, and [are] known as each of the other entities compromising the Partnership." (*Id.* at ¶ 16.) Mr. Bern and Mr. Napoli control and operate the Partnership and its comprising entities and "have received and derived, and they

---
[3] Specifically, the other ten firms are (1) Napoli Bern, LLP; (2) Napoli Bern & Associates, LLP; (3) Napoli Bern Ripka, LLP; (4) Napoli Bern Ripka Shkolnik & Associates, LLP; (5) Law Offices of Napoli Bern, LLP; (6) Law Offices of Napoli Bern Ripka & Associates, LLP; (7) Law Offices of Napoli Bern Ripka Shkolnik, LLP; (8) Law Offices of Napoli Bern Ripka Shkolnik & Associates, LLP; (9) Napoli Kaiser Bern & Associates, LLP; and (10) Pasternack Tilker Napoli Bern, LLP. (*Id.* at ¶¶ 3-16.)

2

continue to receive and derive, profits, money and other beneficial interests from the Partnership." (*Id.*)

## II. The Association Agreements

Sometime before December of 2011, an out-of-state law firm that also focuses on asbestos-related claims (the "Bankruptcy Firm") began referring clients to Keyes.[4] (ECF No. 1 at ¶ 26.) As the amount of referrals Keyes received increased, Keyes began entering into association agreements with other plaintiffs' firms. (*Id.* at ¶ 28.) Ms. Keyes, principal of Keyes Law Firm, testified that in December of 2011, Marc Willick, a solo practitioner attorney to whom Keyes had previously referred cases, called her and said that he was working with Mr. Napoli and NBRS.[5] (Keyes Decl., ECF No. 45-1 at ¶ 3.) He then asked her whether she would consider referring asbestos cases to NBRS, and stated that Mr. Napoli and Mr. Bern would like to meet with her regarding a potential arrangement. (*Id.*) Ms. Keyes testified that prior to receiving Mr. Willick's call, she had never called, emailed, or otherwise contacted Mr. Willick, Mr. Napoli, Mr. Bern, or any individual associated with NBRS for the purpose of referring cases to the firm. (*Id.* at ¶ 4.)

In January of 2012, Ms. Keyes followed up with Mr. Willick to ask him whether Mr. Napoli and NBRS could handle a large amount of asbestos cases. (ECF No. 45-1 at ¶ 5.) He responded affirmatively, and again asked whether she could meet with Mr. Napoli, Mr. Bern and other NBRS attorneys regarding potential referrals. (*Id.*) Ms. Keyes agreed to meet on January 11, 2012, and testified that Mr. Napoli followed up several times after the meeting.

---

[4] Keyes does not identify when the Bankruptcy Firm began referring clients. Specifically, the Bankruptcy firm referred clients with claims against companies that had not filed for bankruptcy, while the Bankruptcy Firm represented the clients in their claims against companies that filed for bankruptcy. (ECF No. 1 at ¶ 26.)
[5] Plaintiff asserts that after Keyes referred Mr. Willick claims as a solo practitioner, he joined NBRS and brought those cases with him to the firm. (ECF No. 1 at ¶ 30.)

3

(*Id.* at ¶¶ 6-7.) Mr. Napoli and Mr. Willick continued to follow up regarding "next steps" until Ms. Keyes and Mr. Napoli agreed to an association template that would govern the cases in which NBRS would serve as co-counsel. (*Id.* at ¶¶ 8-12.) She then began referring cases to NBRS. (*Id.*) Ultimately, from 2012 through 2014, there were 2,174 clients (the "Subject Clients") that the Bankruptcy Firm referred to Keyes and for whom Keyes entered into association agreements with NBRS (the "Association Agreements" or "Agreements"). (*Id.* at ¶ 22; ECF No. 1 at ¶ 29.)

Ms. Keyes testified that each time Keyes and NBRS entered into an Association Agreement, Mr. Napoli or Mr. Bern executed and emailed the Agreement to Keyes' office in Baltimore, Maryland. (ECF No. 45-1 at ¶ 23.) The "referrals included scores of clients who resided in Maryland and/or who were exposed to asbestos in Maryland, along with clients in many other jurisdictions." (*Id.* at ¶ 22.) Pursuant to the Association Agreements, NBRS handled the Subject Clients' claims against the relevant defendants in the jurisdictions applicable to each client's claims. (ECF No. 1 at ¶ 33.) Keyes then served as a liaison between the Bankruptcy Firm and NBRS, provided the firms with pertinent documents, and also communicated with the Subject Clients regarding the status of their claims. (*Id.*)

The Association Agreements set forth a contingency fee-sharing arrangement. First, of the 40% contingency agreement that a Subject Client had with NBRS,[6] the Bankruptcy Firm received 10%, Keyes received 6%, and NBRS received 24%. (*Id.* at ¶¶ 34-35.) Second, as to any awards of attorney's fees, the Bankruptcy Firm recovered 25%, and from the

---

[6] Plaintiff asserts that in the event an underlying contract provided for a 33.3% contingency fee, the percentages of the recovery that the Bankruptcy Firm and Keyes were entitled to did not change. (ECF No. 1 at ¶ 34.)

remaining 75%, Keyes retained 20% and NBRS retained 80%. (*Id.* at ¶ 34.) Under the Association Agreements, NBRS was to send Keyes a single check representing both Keyes and the Bankruptcy Firm's share. (*Id.* at ¶ 36.) Keyes would then send the Bankruptcy Firm its share. (*Id.*) Ms. Keyes testified that of the times the Defendants paid Keyes, Mr. Napoli sent the checks to Keyes' offices in Baltimore, Maryland. (ECF No. 45-1 at ¶ 24.)

Ms. Keyes testified that at the beginning of the referrals, attorneys from NBRS and the other Partnership firms asked her about procedural requirements for filing asbestos cases in Baltimore, Maryland. (ECF No. 45-1. at ¶ 13.) Subsequently, in March of 2012, Mr. Napoli expressed an interest in building an asbestos practice in Baltimore and possibly taking over Keyes' Baltimore asbestos docket. (*Id.* at ¶¶ 15, 17.) Through 2012, Mr. Napoli continued to request additional asbestos referrals in Maryland and other jurisdictions. (*Id.* at ¶¶ 19-21.) He visited Baltimore "on several occasions" in 2012 and 2013 and on at least one of those occasions met with Ms. Keyes to discuss, yet again, sending additional referrals to NBRS. (*Id.* at ¶¶ 26, 27.) Ms. Keyes testified that she and Mr. Napoli spoke on a regular basis in 2012 and 2013 to discuss Keyes' association with Mr. Napoli and his firm. (*Id.*)

### III. Mr. Napoli and Mr. Bern Split in 2014

In 2014, Mr. Napoli and Mr. Bern decided to split as law partners. (ECF No. 1 at ¶ 40.) The firms comprising the Partnership then became the prior forms of firms started by Mr. Napoli and Mr. Bern after the split. (*Id.* at ¶16.) Specifically, Mr. Napoli founded and now controls and operates Defendants Napoli Shkolnik, PLLC, Napoli Law, PLLC, and Paul Napoli Law, PLLC (the "Napoli Firms"). (*Id.* at ¶¶ 17-19.) Mr. Bern founded and controls and operates Defendants Bern Ripka, LLP and Marc J. Bern & Partners, LLP (the

"Bern Firms"). (*Id.* at ¶¶ 20-21.)

Ultimately, Mr. Napoli and Mr. Bern dispersed the cases between the two groups of firms through a fair, court-refereed "Case Distribution Process." (*Id.* at ¶ 42.) Plaintiff asserts that as a result of the Case Distribution Process, the Subject Clients' claims, and any recoveries, were assigned from the Partnership to either Mr. Napoli or Mr. Bern, or one of the Napoli or Bern Firms. (*Id.* at ¶ 43.) Through the assignment, the matters remained subject to the Association Agreements and their terms. (*Id.*) The Plaintiff asserts that as a result of the Case Distribution Process, and evidenced by the Defendants making "sporadic and partial" payments to Keyes, the Defendants understood and agreed that they would honor the Association Agreements and their payment obligations. (*Id.* at ¶ 46.)

Despite Plaintiff Keyes' best efforts, Keyes asserts that it cannot determine with certainty to which firms each Subject Clients' claims were assigned. (*Id.* at ¶ 44.) Mr. Napoli, however, "[w]ith the consent, approval, and authority of all [D]efendants," has remained Keyes' point of contact with respect to the Subject Clients' claims and payments due under the Association Agreements. (*Id.* at ¶ 53.) Keyes has determined that Mr. Napoli and the Napoli Firms continue to handle a large amount of the Subject Clients' claims, pursuant to the Association Agreements. (*Id.*) In fact, Plaintiff asserts that since the Case Distribution Process, stipulations of dismissal have been signed by attorneys from the Napoli Firms on behalf of NBRS. (*Id.*) However, as to the payment obligations under the Association Agreements, Plaintiff asserts that the Defendants have only made "sporadic" and "incomplete" payments which are "isolated to a small number of Subject Clients." (*Id.* at ¶ 54.) As of October of 2016, the payments completely stopped. (*Id.* at ¶¶ 55, 59.)

### IV. Plaintiff's Claims

On October 9, 2017, Plaintiff Keyes Law Firm, LLC filed a Complaint in this Court pursuant to diversity jurisdiction under 28 U.S.C. § 1332 against Marc J. Bern, Paul J. Napoli, the Partnership, the Napoli Firms, and the Bern firms. (ECF No. 1.) The Plaintiff seeks an accounting of various information (Count I), a declaratory judgment concerning the parties' rights, interests, liabilities, and damages (Count II), and also brings claims for breach of contract (Counts III, IV), unjust enrichment (Count V), and constructive trust (Count VI).

## STANDARD OF REVIEW

### I. Motion to Dismiss for Lack of Personal Jurisdiction

A motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction challenges a court's authority to exercise its jurisdiction over the moving party. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). The jurisdictional question is "one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Id.*; *Sigala v. ABR of VA, Inc.*, 145 F. Supp. 3d 486, 489 (D. Md. 2014). While a court may hold an evidentiary hearing or permit discovery as to the jurisdictional issue, it also may resolve the issue on the basis of the complaint, motion papers, affidavits, and other supporting legal memoranda. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *see also Sigala*, 145 F.Supp.3d at 489. If a court does not hold an evidentiary hearing or permit discovery, a plaintiff need only make "a *prima facie* showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Consulting Eng'rs Corp.*, 561 F.3d at 276. When considering whether the plaintiff has made the requisite showing, "the court must take all disputed facts and

reasonable inferences in favor of the plaintiff." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Notably, "a threshold *prima facie* finding that personal jurisdiction is proper does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n. 5 (4th Cir. 2005) (emphasis in original) (citation omitted).

## II. Motion to Dismiss for Failure to State a Claim

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). To satisfy Rule 8(a)(2), a complaint need not include "detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Hall v. DirectTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017).

## ANALYSIS

## I. Motion to Dismiss for Lack of Personal Jurisdiction

8

Mr. Napoli, the Partnership, and the Napoli firms (collectively, the "Napoli Defendants") argue that Plaintiff's claims against them must be dismissed for lack of personal jurisdiction. (ECF No. 26.) Before a court can exercise personal jurisdiction over a non-resident defendant, a court must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute pursuant to Rule 4(k)(1)(a) of the Federal Rules of Civil Procedure; and (2) the exercise of jurisdiction conforms to the Fourteenth Amendment's due process requirements. *Carefirst*, 334 F.3d at 396; *Sigala*, 145 F.Supp. at 489. To satisfy the first prong, a plaintiff must identify a provision in the Maryland long-arm statute that authorizes jurisdiction. *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001). When interpreting the reach of Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc., § 6-103(b), this Court must adhere to the interpretations of the Maryland Court of Appeals. *Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130 (D. Md. 1981), *aff'd*, 758 F.2d 649 (4th Cir. 1985); *Tulkoff Food Prod., Inc. v. Martin*, No. ELH-17-350, 2017 WL 2909250, at *4 (D. Md. July 7, 2017) (citation omitted).

Although Maryland courts "have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set out by the Due Process Clause of the Constitution," *Carefirst*, 334 F.3d at 396, courts must address both prongs of the personal jurisdiction analysis. *Metro. Reg'l Info. Sys., Inc. v. American Home Realty Network, Inc.*, 888 F.Supp.2d 691, 699 (D. Md. 2012); *CSR, Ltd. V. Taylor*, 411 Md. 457, 475-76 (2009). Under the second prong, courts determine whether the exercise of personal jurisdiction comports with the Fourteenth Amendment's due process requirements. For a non-resident defendant, "due process requires only that . . . a defendant . . . have certain minimum contacts . . . such

9

that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A "minimum contacts" determination rests on the number and relationship of a defendant's contacts to the forum state, as well as whether the present cause of action stems from the defendant's alleged acts or omissions in the forum state. *Id.*

Thus, a court may exercise two types of personal jurisdiction: "'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). General jurisdiction arises from a defendant's continuous and systematic contacts in the forum state. *Id.* On the other hand, specific jurisdiction arises when there is an "affiliation between the forum and the underlying controversy." *Id.*; *Carefirst*, 334 F.3d at 397. When assessing specific jurisdiction, the United States Court of Appeals for the Fourth Circuit considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Engineers*, 561 F.3d at 278.

### a. Maryland's long-arm statute authorizes the exercise of personal jurisdiction

As Plaintiff notes, Sections 6-103(b)(1),(2) of Maryland's long-arm statute authorize the exercise of personal jurisdiction over the Napoli Defendants.[7] These provisions state:

> (b) A court may exercise personal jurisdiction over a person, who directly or by an agent:
>     (1) Transacts any business or performs any character of work or service

---

[7] The Napoli Defendants do not address the Maryland long-arm statute in their Motion to Dismiss or Reply to Plaintiff's Response.

10

in the State; [or]
(2) Contracts to supply goods, food, services, or manufactured products in the State[.]

Md. Code. Ann., Cts. & Jud. Proc. § 6-103. In *Swarey v. Stephenson*, 222 Md. App. 65, 112 A.3d 534 (2015), the Maryland Court of Special Appeals explained that to "transact business" under the statute requires that the defendant's actions "culminate[] in purposeful activity within Maryland." 222 Md. App. at 99-100, 112 A.3d 534; *see also Advanced Datacomm Testing Corp. v. PDIO, Inc.*, No. DKC-08-3294, 2009 WL 2477559, at *4 (D. Md. Aug. 11, 2009) ("Where the contacts involve a contract, 'Maryland courts could and would assert jurisdiction over a party to a contract in a suit for breach of that contract if the party has performed purposeful acts in Maryland in relation to the contract, albeit preliminary or subsequent to its execution.'" (quoting *Du–Al Corp. v. Rudolph Beaver, Inc.,* 540 F.2d 1230, 1232 (4th Cir. 1976))). As explained in more detail below, the Napoli Defendants diligently pursued and ultimately entered into the Association Agreements with Keyes, a Maryland entity, whereby NBRS handled the Subject Clients' claims against the relevant defendants in the jurisdictions applicable to each client's claims, including Maryland. (ECF No. 1 at ¶ 33.) Keyes then assisted NBRS and served as a liaison between the Bankruptcy Firm and NBRS. (*Id.*) These Association Agreements were executed by Mr. Napoli or Mr. Bern and emailed to Keyes' office in Baltimore, Maryland, along with payment upon a recovery for the Subject Clients. (*Id.* at ¶¶ 23, 36.) Therefore, the Napoli Defendants entered into contracts with a Maryland entity through which they contracted to and did perform services in the State and Maryland's long-arm statute authorizes the exercise of personal jurisdiction over them.

    **b. Exercise of personal jurisdiction over the Napoli Defendants comports with Due Process**

The thrust of the Napoli Defendants' Motion is that the exercise of personal jurisdiction over them does not comport with Due Process. NBRS and Napoli Shkolnik PLLC operated law offices or otherwise employed attorneys in Baltimore City, Maryland during the events at issue. (ECF No. 1 at ¶ 17.) Further, over the course of NBRS' relationship with Keyes, Mr. Napoli and Mr. Bern called and visited Ms. Keyes in Baltimore, Maryland—contacts from which additional Association Agreements formed. It is debatable whether such contacts can be said to be continuous and systematic contacts in Maryland to establish general jurisdiction. As explained below, however, at a minimum the Napoli Defendants' contacts directed at Ms. Keyes and Maryland are sufficient to establish at least a *prima facie* case of specific personal jurisdiction.

As this Court summarized in *Johansson Corp. v. Bowness Const. Co.*, 304 F. Supp. 2d 701 (D. Md. 2004), in the context of specific jurisdiction over a defendant in a breach of contract matter:

> The Supreme Court has made clear that an out-of-state party's contract with a party based in the forum state cannot "automatically establish sufficient minimum contacts" in the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478, 105 S. Ct. 2174, 85 L.Ed.2d 528 (1985). Instead, the court must perform an individualized and pragmatic inquiry into the surrounding facts such as prior negotiations, the terms of the contract, the parties' actual course of dealing, and contemplated future consequences, in order to determine "whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479, 105 S. Ct. 2174; *see also Mun. Mortgage & Equity v. Southfork Apartments Ltd. P'ship,* 93 F. Supp. 2d 622, 626 (D. Md. 2000). Among the specific facts that courts have weighed are "where the parties contemplated that the work would be performed, where negotiations were conducted, and where payment was made." *Mun. Mortgage & Equity,* 93 F. Supp. 2d at 626 (internal quotation omitted). One of the most important factors is "whether the defendant initiated the business relationship in some way." *See id.* at 626–27 (quoting *Nueva Eng'g, Inc. v. Accurate Elecs., Inc.,* 628 F. Supp. 953, 955 (D. Md. 1986)). Ultimately, the question is whether the contract had a "substantial

connection" to the forum state. *Burger King,* 471 U.S. at 479, 105 S. Ct. 2174; *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners,* 229 F.3d 448, 451 (4th Cir. 2000).

304 F. Supp. 2d at 705. "Even a single contact may be sufficient to create jurisdiction when the cause of action arises out of that single contact, provided that the principle of 'fair play and substantial justice' is not thereby offended." *Carefirst*, 334 F.3d at 397 (citation omitted); *see also Under Armour, Inc. v. Battle Fashions, Inc.*, 294 F. Supp. 3d 428, 434 (D. Md. 2018).

Defendants argue that this Court does not have personal jurisdiction over Plaintiff's claims against them because "[a]lmost all of the contracts here relate to legal services that were performed outside Maryland and have nothing to do with the State other than the fact that Plaintiff is a Maryland entity." (ECF No. 48 at 9.) Under this analysis, the Defendants assert that this Court only has personal jurisdiction over the Defendants with respect to breach of contract claims for forty Association Agreements that involved Maryland-based litigation. (ECF No. 26-1 at 2.) However, all of Plaintiff's claims stem from the *Association Agreements* that Keyes alleges were initially entered into by some Defendants and subsequently assigned to the others, and under which Defendants have failed to honor their payment obligations under the contingency fee-sharing arrangement. Plaintiff's claims relate to breach of those Association Agreements, and the Agreements' surrounding factors described below show that the Defendants cannot plausibly claim that they are surprised that Plaintiff brought their claims in this Court. *See Vogel v. Morpas*, No. RDB-17-2143, 2017 WL 5187766, at *6 (D. Md. Nov. 9, 2017) ("Therefore, [the defendant] cannot plausibly claim that it is surprised that as a result of brokering that Agreement, litigation in Maryland might ensue. Accordingly, this Court finds that [the defendant] purposefully availed itself of the

13

privilege of conducting activities in Maryland.").

Beginning with "the most important factor" of "whether the defendant initiated the business relationship in some way," Ms. Keyes testified that prior to December of 2011, she had never called, emailed, or otherwise contacted Mr. Napoli, Mr. Bern, Mr. Willick, or any other individual associated with NBRS. (ECF No. 45-1 at ¶ 4.) Rather, it was Mr. Willick—who began his relationship with Keyes as a solo practitioner but is alleged to have subsequently brought his Subject Client matters to NBRS—who initially contacted her about possible referrals to NBRS and stated that Mr. Napoli and Mr. Bern would like to meet with her regarding a potential arrangement. (*Id.* at ¶¶ 3-4.) After Ms. Keyes followed up to explore the idea, Mr. Napoli contacted her several times regarding "next steps" and an association agreement template. (*Id.* at ¶¶ 6-12.) Therefore, it was the Defendants who initiated the Association Agreements with Keyes.

Further, the Association Agreements were executed by Mr. Napoli or Mr. Bern emailing the agreements to Keyes' office in Baltimore, Maryland. (ECF No. 1 at ¶ 23.) Through the Association Agreements, Keyes sent Mr. Napoli, Mr. Bern, and the Partnership "scores of clients who resided in Maryland and/or who were exposed to asbestos in Maryland, along with clients in many other jurisdictions." (ECF No. 45-1 at ¶ 22.) Subsequently between 2012 and 2013, Ms. Keyes testified that Mr. Napoli spoke with her on a regular basis to discuss additional referrals and Association Agreements and that Mr. Napoli also visited Baltimore "on several occasions" and on at least one of those occasions met with Ms. Keyes in-person. The Napoli Defendants' course of conduct when continuing to ask Ms. Keyes for additional referrals, along with Mr. Napoli's expression of his desire to

14

take over Keyes' asbestos docket in Baltimore, shows that they purposefully established minimum contacts with Maryland. Further, when working on the cases referred through the Association Agreements, NBRS and Napoli Shkolnik PLLC operated law offices or otherwise employed attorneys in Baltimore City, Maryland. Finally, the payments that Defendants did make were sent to Keyes' office in Baltimore, Maryland.

Given that Ms. Keyes did not initiate the relationship between Keyes Law Firm and the Defendants, and that Mr. Napoli and Mr. Bern actively pursued referrals by calling Ms. Keyes and visiting Baltimore, Maryland, Plaintiff has made at least a *prima facie* showing that exercising personal jurisdiction over Keyes' claims related to breach of the Association Agreements against the Napoli Defendants does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316; *see also Message Sys., Inc. v. Integrated Broadband Servs., LLC*, No. CCB-09-2122, 2010 WL 2891706, at *6 (D. Md. July 20, 2010) ("It was foreseeable that any violation of the contract terms or . . . would cause injuries to [the plaintiff] in Maryland, and therefore it would have been reasonable for [the defendant] to assume that it might be called into court in Maryland."). Accordingly, the Napoli Defendants' Motion to Dismiss for lack of personal jurisdiction is DENIED.[8]

## II. Motion to Dismiss for Failure to State a Claim

Alternatively, the Napoli Defendants also argue that the Complaint fails to state a claim for numerous reasons, each of which is without merit. First, the Napoli Defendants argue that as to the "non-NBRS Defendants," Plaintiff's theory that NBRS assigned the

---

[8] Plaintiff also argues, given Defendants' assertion that this Court at least has jurisdiction over breach of contract claims for forty of the Association Agreements, that this Court could exercise pendent jurisdiction over the remaining claims. Because this Court finds that it has personal jurisdiction over Plaintiff's claims, it does not reach this argument.

15

obligations in the Association Agreements "is not true. There were no assignments and NBRS continues to represent the clients that are subject to the agreements." (ECF No. 26-1 at 8 (citing Maslo Decl., ECF No. 26-2 at ¶ 19).) Accordingly, the Napoli Defendants assert that Plaintiff cannot bring breach of contract claims against the non-NBRS Defendants. As to this argument, the Napoli Defendants overlook that at the motion to dismiss stage, this court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017).

Plaintiff asserts that when Mr. Napoli and Mr. Bern split as law partners and the cases were distributed among the Napoli and Bern Firms, the Subject Clients' claims, and any recoveries, were assigned from the Partnership to either Mr. Napoli or Mr. Bern or one of the Napoli or Bern Firms. (ECF No. 1 at ¶ 43.) Through the assignment, the matters remained subject to the Association Agreements and their terms and all of the Defendants understood and agreed that they would honor the Association Agreements, including the payment obligations. (*Id.* at ¶ 46.) Further, Plaintiff asserts that the Defendants acknowledged their payment obligations since the Case Distribution Process by making some payments to Keyes. (*Id.* at ¶ 54.) The Napoli Defendants may not, through a Rule 12(b)(6) motion, challenge Plaintiff's factual assertion that the assignment occurred. Therefore, the Napoli Defendants' motion to dismiss the breach of contract claims against the non-NBRS Defendants is denied.

Second, the Napoli Defendants assert that Mr. Napoli is not personally liable for

breach of contract claims against the law firms given that under New York law, members of limited liability companies are not liable for obligations, liabilities, or debts of the LLC or each other. Therefore, Defendants assert that Mr. Napoli was never bound in his individual capacity under the Agreements. First, as the basis of this Court's jurisdiction is diversity of citizenship under 28 U.S.C. § 1332, Maryland law, and not New York law, may apply with respect to this question.[9] Secondarily, the Complaint asserts that Mr. Napoli himself was assigned some of the Association Agreements and benefited from the same. (ECF No. 1 at ¶¶ 42-43.) Therefore, without determining Mr. Napoli's liability on behalf of the firms at this time, Plaintiff's claims are not solely against Mr. Napoli in his capacity as an agent for the law firms and Defendants' motion to dismiss this claim is denied.

Third, the Napoli Defendants assert that Plaintiff may not bring a claim for unjust enrichment because it is undisputed that an express contract exists between Plaintiff and at least NBRS. The Maryland Court of Appeals held in *Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 747 A.2d 600 (Md. 2000) that if an express contract exists, a plaintiff "cannot seek relief through the quasi-contractual remedy of unjust enrichment." 358 Md. at 102. However, Federal Rule of Civil Procedure 8(d)(2) permits pleading in the alternative. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively . . . ."). In this context, a plaintiff may plead in the alternative claims for both unjust enrichment and breach of contract, as long as the claim for unjust

---

[9] In diversity jurisdiction cases, this Court applies the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020 (1941). Maryland courts generally follow the principle of *lex loci contractus* and apply the law of the jurisdiction where the contract was made. *Key Gov't Fin., Inc. v. E3 Enterprises Inc.*, 2 F. Supp. 3d 741, 745 (D. Md. 2014) (citing *Allstate Ins. Co. v. Hart,* 327 Md. 526, 611 A.2d 100 (1992)).

17

enrichment includes an allegation of fraud or bad faith in the formation of the contract. *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 608 (D. Md. 2015) (citation omitted). Count Five of the Complaint asserts that "in the event and to the extent that this Court determines that the obligation of payment owed by any defendant to KLF is not covered by an express contract . . . in bad faith the defendants have taken for themselves [Keyes'] money . . .." (ECF No. 1 at ¶¶ 96, 98.) Therefore, in addition to pleading breach of contract, Plaintiff has also sufficiently pled in the alternative a claim for unjust enrichment and Defendants' motion to dismiss Plaintiff's unjust enrichment claim is denied.

Fourth, Defendants assert that Plaintiff's claims for constructive trust and an accounting must be dismissed because they cannot be asserted as free-standing, independent causes of action. (ECF No. 26-1 at 9-10.) This Court does not, however, dismiss Plaintiff's breach of contract claim and accordingly neither of the claims are "free-standing." *See Chassels v. Krepps*, 235 Md. App. 1, 15, 174 A.3d 896 (Md. Ct. Spec. App. 2017) (explaining that a constructive trust is an equitable remedy that "may be imposed by the court where property was acquired through an improper method or a breach of a confidential relationship" (citing *Wimmer v. Wimmer*, 287 Md. 663, 668, 414 A.2d 1254 (1980))); *Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 366, 36 A.3d 399 ("In Maryland, a claim for an accounting is available when 'one party is under obligation to pay money to another based on facts and records that are known and kept exclusively by the party to whom the obligation is owed, or where there is a fiduciary relationship between the parties . . . ..'" (quoting *P.V. Props., Inc. v. Rock Creek Village Assocs. Ltd. P'ship*, 77 Md. App. 77, 89, 549 A.2d 403, 409 (Md. Ct. Spec. App. 1988))). Therefore, the Napoli Defendants' motion to dismiss

these claims is denied.

Finally, the Napoli Defendants assert that Plaintiff's claim for declaratory judgment must be dismissed because there is no justiciable controversy. (ECF No. 26-1 at 10.) The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon filing of an appropriate pleading, may declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The Napoli Defendants assert that "[i]f the non-NBRS Defendants are not parties to the contracts and have no obligations to Plaintiff, there is simply nothing left for the Court to decide regarding those Defendants and there is no justiciable controversy for a declaratory judgment." (ECF No. 48 at 15.) As explained above, however, Plaintiff has pled that that the non-NBRS Defendants are parties to the Association Agreements because they were assigned to the various Defendants during the Case Distribution Process. Therefore, the Napoli Defendants' motion to dismiss Plaintiff's declaratory judgment claim is denied and the Napoli Defendants' Motion to Dismiss (ECF No. 26) is DENIED.

## CONCLUSION

For the reasons stated above, the Napoli Defendants' Motion to Dismiss (ECF No. 26) is DENIED and Plaintiff's Motion to File a Surreply (ECF No. 51) is MOOT.

A separate order follows.

Dated: August 14, 2018                                     /s/

Richard D. Bennett
United States District Judge

19