**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(NORTHERN DIVISION)**

| | |
|---|---|
| KEYES LAW FIRM, LLC,     : | |
|     : | Civil Action |
| *Plaintiff,*     : | |
|     : | CASE NO.: 1:17-CV-02972-RDB |
| v.     : | |
|     : | |
| NAPOLI BERN RIPKA SHKOLNIK, LLP, *et al.,*     : | |
|     : | |
| *Defendants.*     : | |
|     : | |

## RULE 53 MOTION TO APPOINT SPECIAL MASTER

Pursuant to Fed. R. Civ. P. 53, Defendants Napoli Shkolnik, PLLC, Napoli Shkolnik & Associates, PLLC, Paul Napoli Law, PLLC, Napoli Law, PLLC, and Paul J. Napoli, individually (the "Moving Parties"), by and through their undersigned counsel, hereby move for an order appointing a Special Master to issue factual determinations as to how much has been recovered on behalf of the 2,174 Subject Clients, and what has been paid to KLF in connection with those recoveries.

I.     **INTRODUCTION**

The crux of Plaintiff's claim is that it is owed referral fees based on 2,174 Association Agreements, each representing an underlying asbestos plaintiff's bundle of claims against non-bankrupt asbestos defendants.  The parties do not dispute that the Plaintiff is only owed a referral fee on recoveries received, and not for cases that were closed, withdrawn, or dismissed with no recovery, or where the settlements have not yet been funded. (See ECF 261, at 10-11, and sources cited therein).   A major stumbling block in resolving this case is that the parties do not agree on the answer to the following key questions of fact:

1

(1) How much has been recovered in each of the underlying 2,174 asbestos cases; and

(2) How much has KLF received from Defendants in connection with those cases?

While the parties disagree sharply about why there is no agreement on these two basic questions, it is indisputable that these are determinable factual matters, not opinions. The information to resolve these questions has been produced by the Defendants. Yet as set forth herein, unless an alternative is adopted, this Court and the parties will be forced to litigate at great cost, in terms of both time and money, facts that are readily determinable. These questions are not only relevant, but are integral to multiple elements of Plaintiff's claims, including whether any Association Agreement has been breached, and if so, what Plaintiff's damages are for such a breach.

These factual questions cannot be resolved without such a determination in each of the underlying cases. The documents relevant to establishing the facts relevant to these inquiries fill 14 bankers boxes and comprise over 10 GB of data. This case is currently scheduled for a five-day jury trial for December 9, 2019. The purpose of this Motion is to propose an efficient and fair method for establishing the amount recovered in each of the underlying 2,174 asbestos cases and how much KLF has received from Defendants in connection with each of those cases.

## II.   **ARGUMENT**

In complex cases, courts may seek the assistance of a special master. See *In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124, 1138 (9th Cir. 2002) (court can appoint master and decide extent of duties). Pursuant to Federal Rule of Civil Procedure 53(a)(1)(b), a court may appoint a master to "hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury if appointment is warranted by: some exceptional condition; or the need to perform an accounting or resolve a difficult computation of damages." In addition, Rule

53(a)(1)(c) permits a master appointment to address pretrial and post-trial matters that cannot be timely addressed by an available district judge.  Neither of these two subsections requires the consent of the parties, although a court may seek their agreement to an appointment.  Federal Rule 53(a)(1)(a) also empowers a judge to appoint a master to perform duties that are consented to by the parties.

### A.  Presenting 2,174 Breach of Contract Cases Before a Single Jury is Impractical And Inefficient.

Even in a perfect world, trying 2,174 separate breach of contract actions to a jury would be extremely time consuming, expensive, and complicated.  Even if the presentation of evidence, direct and cross examination for each case took only one hour (which is optimistic), it would take 362 six-hour trial days to present just the evidence on this one question.  The jury would have to make at least 4,348 separate findings to resolve the two questions posed above in each case, and each of those findings would require presentation of dozens of documents.  Such an undertaking is beyond what the Court could reasonably expect a single jury to handle and it cannot be done in a five-day jury trial.

This undertaking is further complicated by the fact that each one of the 2,174 underlying cases may have been brought against anywhere from one to a dozen or more potential defendants.  This means there are tens of thousands of individual transactions between the underlying asbestos plaintiffs and the asbestos defendants that must be taken into account.  Adding to that volume of data is the fact that certain settlements within this KLF group were handled as groups within the group, and some of those groups were included in settlements with asbestos plaintiffs that are not part of the KLF group (*i.e.* some settlements with certain asbestos defendants included asbestos plaintiffs that were not referred by KLF).  Each of these groups and groups within groups, involved an allocation of settlement funds.  Further, some asbestos

defendants settle and pay right away, while others have their own time or event driven issues that impact when payment is made.  Still other asbestos defendants may not meet their commitments to pay at all.  These timing issues further complicate an accounting.

It is worth noting that this is not the first time that the unprecedented large number of plaintiffs in the asbestos litigation has challenged the judiciary to come up with ways of resolving large numbers of claims.  In this very district, faced with thousands of asbestos cases in the 1980's, the cases were broken into monthly trial groups of about five or six cases which was based upon the notion that a single jury could not reasonably keep track of, much less fairly decide, more cases at once.  This court never tried mass consolidations as was done with very mixed results in other jurisdictions in recognition of the fact that justice requires that we not ask a jury to do the impossible.

## B.  Plaintiff Experts Agree with the Remedy Requested by this Motion.

An alternative method of presenting the evidence concerning contract damages in the present case would be to have competing forensic auditor experts who would do all of this work outside the presence of the jury and present their conclusions to the jury.  However, Plaintiff's experts admitted that they did not conduct a forensic accounting, even though both of Plaintiff's damages experts acknowledge that a forensic audit would be the proper method for determining how much was recovered in each case and how much was paid to KLF in each case.  One of Plaintiff's experts, Michael Young, is an experienced financial auditor (Ex. 1 – Young dep. at 13:8-10), but he was not engaged to offer opinions concerning damages. [1]  Mr. Young testified

---

[1] Mr. Young is not being offered to testify about the amounts due or the amounts paid in this case.  Instead, Mr. Young has offered opinions relating to "the relationships of the legacy defendants amongst and between themselves, as well as the relationship between of Napoli Shkolnik PLLC and Napoli Shkolnik & Associates," (Young dep. at 12:11-17)

that a forensic audit would answer the question about how much money was collected on behalf of the 2,174 asbestos plaintiffs (Id. at 14:5-12).  In Mr. Young's lengthy audit career, he has never encountered a situation in which a forensic audit was unable to answer that type of question.  (Id. at 39:16-40:4).  Plaintiff's two damages experts are Charles Mullin and Andrew Evans, both of with the consulting firm, Bates White.  Bates White does not conduct forensic audits.  (Ex. 2 - Evans dep. at 27:8-19)   Dr. Mullin testified that the best way to determine what is owed and what has been paid would be to have "an outside accounting firm doing an audit…. That's what you'd ideally want to do."  (Ex. 3, Mullin dep. at 120:4-13).  In other words, Plaintiff's own experts agree that what is being suggested by the instant motion is how the open questions of fact should be resolved.

In contrast, the two Bates White witnesses testified that they were tasked not with determining what had been recovered on behalf of the Subject Clients, but rather, what, in their opinion, **should have been recovered** based on their experience with other asbestos plaintiffs in other jurisdictions—none of which data is published anywhere or subject to peer review or scrutiny. Plaintiff's experts acknowledge that they did not review ANY of the client files to determine the merits of the claims or the damages for any of the underlying claims.  Defendants will move to exclude their testimony because it does not comport with the appropriate measure of damages for a breach of contract and therefore does not assist the jury in determining what is actually due to Plaintiff in this case.  The Association Agreements require payment of a referral fee based upon settlements *actually received*, not based on some "average" or "expected" recovery.  Plaintiff's professed "justification" for proceeding in this manner are alleged discovery failures of the Defendants and a statistically insignificant number of errors it discovered in the Defendants' data across 2,174 files.  However, Defendants have retained an

5

accountant to review the recoveries who determined that a review of subpoenaed documents from asbestos defendants identified only a 1% discrepancy where Defendants underreported settlement figures, which was offset by a 3.6% discrepancy where the Moving Parties reported greater settlement figures than those reported by the asbestos defendants.  (*See* Supplemental Declaration of Emre Carr, attached as Exhibit 4.)  Even if Plaintiff persists in its distrust of Defendants' figures, it is undeniable that its measure of damages under the contract is based upon discernible figures representing what was actually recovered, and not an average or expected figure for lung cancer cases multiplied by each of the lung cancer plaintiffs referred to NBRS.

In sum, none of Plaintiff's experts are prepared to offer an opinion on these two basic questions which leaves the Court to confront the presentation of evidence through an in-court review of the relevant financial documents.  Just the documents relating to cases where there was no recovery filled 14 bankers-boxes which were attached to these Defendants' motion for partial summary judgment.

Given that there is no forensic auditor expert for the Plaintiff that will testify at trial and given that the Court has set aside five days to try this case, Plaintiff will need at least another 357 trial days to present just its breach of contract claim.  This is true even if Plaintiff persists in its newly offered theory that there was a "course of conduct" that established a single "overarching" contract consisting of 2,174 component parts because Plaintiff would still have to establish its damages by presenting evidence of the breach and resulting damages in each of the 2,174 component parts.

Of course, if Plaintiff cannot present evidence to support each of its 2,174 breach of contract claims, Defendants will move for judgment on all of those cases in which no evidence was offered.

### C.  Appointment of a Special Master is a Better Alternative

Defendants propose that the Court proceed pursuant to Rule 53(a)(1)(b) to appoint a master to perform a forensic audit and provide a written report to the Court on two matters:

1) The amount received by Defendants as recovery for each of the 2,174 asbestos plaintiffs represented by an Association Agreement.[2]
2) The amount received by KLF from Defendants as fees for each of the 2,174 asbestos plaintiffs represented by an Association Agreement.

Making this request is a substantial concession on the part of Defendants and should be readily accepted by Plaintiff though the Plaintiff need not accept this concession in order for the Court to grant this motion.  In fact, an audit (accounting) is one of the forms of relief prayed in the Complaint.  Defendants believe that the documents already produced fully respond to these questions but acknowledge that presentation of them to a jury will be time consuming and difficult.  Defendants further understand that Plaintiff does not trust Defendants and therefore questions every document and disbelieves anything that Defendants represent about these financial matters.  An independent forensic audit should put those issues to rest.  With proper safeguards to protect confidentiality of matters that have nothing to do with KLF and with the right to take any disputes as to scope to the Special Master for resolution, Defendants are prepared to permit an independent forensic accounting firm to review such financial records as the auditor in his professional judgment believes are necessary to complete his assignment.

---

[2] The number of cases subject to audit would be substantially reduced if the Court grants any of Defendants' currently pending motion for summary judgment as to cases in which no recovery was made.

The Forensic Auditor should not be tasked with assessing whether costs charged to the cases are appropriate, inasmuch as this is not an accounting function, but rather involves determinations of credibility and judgment which are inappropriate for determination by a Special Master.  Rule 53 – 2003 Notes of Advisory Committee ¶ 6.

The Forensic Auditor's report should be annotated to the extent required by accepted auditing standards.

Defendants request that the Special Master be one of this Court's Magistrate Judges who has had no prior role in this case, who would be directed to engage a neutral forensic auditor with input from the litigants.  The litigants would be encouraged to agree on the selection of the forensic auditor but absent agreement, the Magistrate Judge (acting as Special Master) would select the auditor from among up to four candidates (two nominated by Plaintiff and two nominated by Defendants collectively).

The Forensic Auditor would be directed to conduct a reasonably thorough audit and produce a written report responding to the two questions above for each of the cases assigned.

The Special Master would be empowered to rule on disputes that may arise concerning the Forensic Auditor's work as brought to his/her attention by the parties or the Forensic Auditor. The Special Master should implement procedures for bringing issues before him/her quickly and with a minimum of briefing.

The end-product of this procedure would be a report from the Forensic Auditor that would be presented to the jury as evidence.  Rule 53 – 2003 Notes of Advisory Committee ¶ 8. *Jackson v. Local Union 542, Int'l Union of Operating Eng'rs*, 155 F. Supp. 2d 332, 337-38 (E.D. Pa. 2001) ("…[T]he Special Master's findings are simply admissible evidence to be considered by the jury, with the jury remaining the ultimate arbiter of fact." (citing cases)).

The Special Master should be directed to proceed with all deliberate speed to complete the tasks assigned.

### D.       Following Completion of the Special Master's Work

The parties may be able to stipulate to the facts as found in the Forensic Auditor's report (which would involve Defendants' waiving their right to a jury trial on that specific issue).  One can easily see how most, if not all of the remaining issues in the case would be potentially resolved by agreement once the main point of contention (the amount owed, and the amount paid) have been resolved.

If certain issues remain, trial of them should be considerably more manageable, particularly if the Forensic Auditor's report is stipulated to by the parties.  However, even if that is not the case, the remaining disputes will be in much sharper focus and should be far fewer in number.

### E.  Appointment of the Special Master Will Not Create Unreasonable Expense or Delay

Rule 53(a)(3) directs that the court must consider the fairness of imposing the likely expenses of the Special Master on the parties and must protect against unreasonable expense or delay.  Plaintiff's expert Charles Young, himself a qualified forensic auditor, estimated that the cost of a forensic examination in this case using a sampling approach would cost in the range of $30,000 to $40,000.  (Young Dep. at 15:10-16:21 – "So for 30 to $40,000, I believe that we could have completed a forensic audit.")  Even if a sampling approach needs to be supplemented by more detailed analysis for certain cases resulting in a quadrupling of the cost, the cost saving in not having to try this case for months if not years is significant.  Although Mr. Young did not estimate the length of time needed to complete a full-blown forensic audit, it is certainly less time than it would take to try this case without a forensic audit and cost substantially less overall.

Plaintiff may argue that it is prepared to try the case using its unsupported aggregate average theory of contract damages, but even if this Court permits the trial to go forward on that basis, there will inevitably be an appeal if judgment is entered based upon that theory.  In fact, any judgment based upon anything but an analysis of the settlements actually received by Defendants and offset by funds received by KLF, will be a pyric and short-lived victory.  In the long-run, it makes no sense to force the case to trial when a viable and better alternative exists.

 Additionally, the current pre-trial schedule fails to take into account submissions that are usually covered in a pre-trial schedule.  Somehow when the pre-trial schedule was revised, dates for the parties to prepare and submit the pre-trial order, for a pre-trial conference, for preparation of joint exhibit lists, or for preparation and submission of jury instructions, *voir dire* questions, and special verdict forms, were omitted.  There is simply no enough time prior to trial to establish deadlines and complete all of these tasks.

Finally, Defendants anticipate that Plaintiff will argue that this proposal should be rejected as coming too late—that it should have been done long ago.  Defendants response is two-fold.  First, any lawyer or judge with any experience in litigating cases knows that often, cases do not settle or resolve until the litigants are on the courthouse steps. There are many reasons for this, but most of those reasons relate to the fact that completing discovery, preparing dispositive motions and preparing for trial bring a clarity to the process that is simply not present without those steps.  Such is the case here.  Second, is that a trial that does not resolve the issues between these parties accomplishes nothing for either side.  The parties clearly want to be done with each other but without the assurance in the financial data that a forensic audit should provide, it appears unlikely that this dispute will end anytime soon.

### F. The Cost of the Forensic Auditor Engaged by the Special Master Should be Shared Evenly Between Plaintiff and Defendants Collectively

Rule 53(g)(2) provides that the Special Master (or in this case, the Forensic Auditor engaged by the Special Master) must be paid by either the parties or from a fund or subject matter of the action within the court's control.  Rule 53(g)(3) directs that in allocating the payment among the parties, the court should consider:

> the nature and amount in controversy, the parties' means, and the extent to which any party is more responsible than other parties for reference to a master.  An interim allocation may be amended to reflect a decision on the merits.

Federal Rule 53(g)(3).

Defendants request that the Court establish at least on an interim basis, that the parties share evenly the costs between Plaintiff and Defendants collectively.  At the close of the case, the Court can reconsider the interim allocation, taking particular note of which party's accounting (as evidenced by its pre-audit filings) was closest to the Forensic Auditor's conclusion as to the amounts owed and paid.  This will provide the court with a more objective criteria for determining which party is more responsible for the inability of the parties to agree on what the documents produced in discovery show.

## III.  <u>CONCLUSION</u>

In light of the foregoing, the Moving Parties respectfully requests that this Honorable Court enter an order appointing a Special Master to make factual determinations regarding the amount recovered on behalf of each of the 2,174 Subject Clients, and what has been paid to KLF in connection with those recoveries to date.   A proposed Order Appointing Special Master is attached.

Respectfully submitted,

**OFFIT KURMAN, P.A.**

By: */s/ Meghan K. Finnerty*
Harold M Walter, Esquire
Timothy C Lynch, Esquire
Eric J Pelletier, Esquire
Meghan K Finnerty, Esquire
*(admitted pro hac vice)*
300 East Lombard Street, Suite 2010
Baltimore, MD 21202
Telephone: 410-209-6400
Facsimile: 410-209-6435
Email: tlynch@offitkurman.com
        hwalter@offitkurman.com
        epelletier@offitkurman.com
        mfinnerty@offitkurman.com

*Counsel for Defendants Paul J. Napoli,
individually, Napoli Shkolnik, PLLC, Napoli
Shkolnik & Associates, PLLC, Paul Napoli
Law, PLLC and Napoli Law, PLLC*

Dated: November 18, 2019