IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KEYES LAW FIRM, LLC, | * | |
| Plaintiff, | * | Civil Action No. RDB-17-2972 |
| v. | * | |
| NAPOLI BERN RIPKA SHKOLNIK, LLP, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM ORDER

Currently pending before this Court is Defendants Paul J. Napoli, Napoli Shkolnik, PLLC, Napoli Shkolnik & Associates, PLLC, Paul Napoli Law, PLLC, Napoli Law, PLLC, Napoli Bern Ripka Shkolnik, LLP, Napoli Bern, LLP, Napoli Bern & Associates, LLP, Napoli Bern Ripka, LLP, Napoli Bern Ripka Shkolnik & Associates, LLP, Law Offices of Napoli Bern, LLP, Law Offices of Napoli Bern Ripka & Associates, LLP, Law Offices of Napoli Bern Ripka Shkolnik LLP, and Law Offices of Napoli Bern Ripka Shkolnik & Associates LLP's (collectively, "Defendants") Motion for Judgment as a Matter of Law on Count VI – Constructive Trust (ECF No. 550).[1] The parties' submissions have been reviewed, and no

---

[1] Also pending in this case are the following post-trial motions: Plaintiff's Motion Requesting Award of Attorneys' Fees and Costs (ECF No. 452); Plaintiff's Post-Trial Brief in Support of Award of Pre-Judgment Interest (ECF No. 467); Plaintiff's Motion Requesting Award of Attorneys' Fees and Costs (ECF No. 493); Plaintiff's Supplemental Motion Requesting Award of Attorneys' Fees and Costs (ECF No. 507); Napoli Defendants' Motion to Strike, or in the Alternative, Opposition to Plaintiff's Supplemental Motion Requesting Award of Attorneys Fees and Costs (ECF No. 518); and Legacy Defendants' Motion to Strike, or in the Alternative, Opposition to Plaintiff's Supplemental Motion Requesting Award of Attorneys Fees and Costs (ECF No. 519).

On August 27, 2020, this Court entered an Order deferring the adjudication of Plaintiff's request for an award of attorneys' fees and expenses and all related motions (ECF Nos. 452, 493, 507, 518, 519) until after the conclusion of the appeals that have been noted or will be noted in this case. (Order, ECF No. 560.) The Court will address the Plaintiff's Post-Trial Brief in Support of Award of Pre-Judgment Interest (ECF No. 467)

hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, Defendants' Motion for Judgment as a Matter of Law on Count VI – Constructive Trust (ECF No. 550) is GRANTED. Judgment will be entered in favor of Defendants on Count VI – Constructive Trust, and against Plaintiff Keyes Law Firm.

## BACKGROUND

This case arises out of 2,174 "association agreements" between Plaintiff Keyes Law Firm ("Keyes"), Paul Napoli, Marc Bern, and multiple law firm Defendants (collectively, "Defendants"). Pursuant to these agreements, Plaintiff Keyes and an associated Bankruptcy Firm, formerly known as the David Law Firm and now known as The Cooper Hart Firm ("the Bankruptcy Firm")[2], referred thousands of asbestos-related claims to Defendant Napoli Bern Ripka Shkolnik ("NBRS"). In the event that the clients prevailed, Keyes, the Bankruptcy Firm, and NBRS were to divide any contingency fees earned in most cases as follows: NBRS was to receive 24% of the fees, the Bankruptcy Firm was to receive 10% of the fees, and Keyes was to receive 6% of the fees.[3] (Joint Trial Exhibit 2, Association Agreements.) Under the association agreements, NBRS was to send Keyes a single check representing both Keyes' share and the Bankruptcy Firm's share and Keyes was to then forward the Bankruptcy Firm its 10% share. (*See* July 18, 2013 Association Agreement, ECF No. 552-1 ("When disbursing attorneys' fees, for each disbursement [Defendants] will send a single check to [Keyes]

---

by separate opinion and order, with pre-judgment interest based on the final amended judgment amount entered on September 4, 2020. (ECF No. 562.)

[2] The Bankruptcy Firm is not a party to this case.

[3] In some cases, the association agreements provided for different breakdowns of fees, but the majority of the agreements provide that the Bankruptcy Firm was to receive 10% of each settlement.

2

representing [Keyes'] share of the attorneys' fees, as well as [the Bankruptcy Firm's] share. [Keyes] will then write [the Bankruptcy Firm] a check for its portion of the fees.").)

This case proceeded to a jury trial on December 9, 2019. On Sunday evening, December 8, 2019, on the eve of trial, counsel for the Bankruptcy Firm sent a letter to Keyes's counsel and Defendants' counsel, advising them that Keyes was relieved of its obligation to remit to the Bankruptcy Firm its share of the gross recoveries of the 2,174 subject clients. Specifically, the Bankruptcy Firm's letter provided,

> None of the parties or their counsel is authorized to speak or act for the [Bankruptcy Firm].... [The Bankruptcy Firm] does not want or expect any money by virtue of the Lawsuit and hereby relieves [Plaintiff] KLF of the obligation, if any, to pay a portion of any recovery from the Lawsuit to [the Bankruptcy Firm].

(12/8/2019 Bankruptcy Firm Letter, ECF No. 407-2.)

In light of this last-minute development, the parties and the Court agreed that the issue of the Bankruptcy Firm's share would be addressed as a post-trial matter within the context of relief sought under the constructive trust count (Count VI). The record reflects that counsel for the Plaintiff and Defendants agreed that the issue of any constructive trust and distribution of the Bankruptcy Firm's share would be addressed in that fashion. The jury rendered a verdict against the Napoli Defendants and the majority of the Legacy Defendants, determining that the total settlement recovery for the 2,174 subject clients is $45,300,000, resulting in a verdict in favor of Keyes in the amount of $1,502,882.00. (Jury Verdict, ECF No. 445.) On September 4, 2020, this Court ordered that the total settlement recovery amount should be amended to $31,700,000. (ECF No. 562.) Accordingly, ten percent of that amount representing the potential Bankruptcy Firm's share would be $3,170,000.

The parties agree that the amount previously remitted to the Bankruptcy Firm pursuant to the fee-sharing agreement among the parties and Subject Clients is $1,072,422.76. Thus, the Bankruptcy Firm's 10% share would have been $3,170,000 (i.e. 10% of the total recoveries) minus $1,072,422.76 (i.e. the amount remitted to the Bankruptcy Firm). Accordingly, there is no dispute that the net Bankruptcy Firm share would have been $2,097,577.24. The parties disagree about whether and how this amount should be disbursed. On July 15, 2020, this Court held a telephonic conference to address the constructive trust count, and ordered that the parties submit additional briefing on the issue. (ECF Nos. 545, 547.) The issue has now been fully briefed.

## STANDARD OF REVIEW

The Defendants contend that Keyes lacks standing to pursue any claim as to the 10% share to which the Bankruptcy Firm would have been entitled. Accordingly, the Defendants contend that this Court lacks subject matter jurisdiction on the constructive trust claim, initially set forth in Count VI of the Second Amended Complaint.

A party may challenge the subject matter jurisdiction of a federal court "at any time, including on direct appeal." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998); *see also* Wright & Miller, Civ. Prac. & Proc. § 1350 (3d ed. 2020). After judgment has been entered, a party may do so by motion for relief from judgment under Rule 60(b)(4) of the Federal Rules of Civil Procedure. *See* Wright & Miller, § 1350. An assertion of lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F.Supp.2d 792, 799 (D. Md. 2005).

Under Article III of the United States Constitution, the judicial power of the United

States extends only to "cases" and "controversies." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.' " *Id.* at 91, 133 S.Ct. 721 (quoting *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982)). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiff's particular legal rights.'" *Id.* (quoting *Alvarez v. Smith*, 558 U.S. 87, 92, 130 S.Ct. 576, 175 L.Ed.2d 447 (2009)). Accordingly, a court's subject matter jurisdiction depends on the existence of an actual case or controversy. *S.C. Coast. Conservation League v. U.S. Army Corps. of Eng'rs*, 789 F.3d 475, 482 (4th Cir. 2015). "[T]he absence of jurisdiction may be raised at any time during the case, and may be based on the court's review of the evidence." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

Finally, if a party lacks standing, the court automatically lacks subject matter jurisdiction. *See Pitt County v. Hotels.com, L.P.*, 553 F.3d 308, 312 (4th Cir. 2009). To meet the standing requirement, a plaintiff must show "injury in fact," which is an "invasion of a legally protected interest which is (a) concrete and particularized, … and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992) (internal citations and quotation marks omitted). Second, the injury must be "fairly traceable to the challenged action of the defendant." *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81, 120 S. Ct. 693, 145 L.Ed.2d 610 (2000); *Lujan*, 504

U.S. at 560-61, 112 S. Ct. 2130; *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Third, it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* It is the plaintiff's burden to establish both standing and subject matter jurisdiction. *Id.*; *Lovern*, 190 F.3d at 654.

## ANALYSIS

Defendants seek judgment in their favor as a matter of law on Plaintiff's constructive trust claim, asserting that this Court lacks subject matter jurisdiction because Plaintiff lacks standing to pursue the claim. As a preliminary matter, Keyes is incorrect in its assertion that the Court determined at trial that Plaintiff was *entitled* to a constructive trust. While the Court contemplated ways to address the Bankruptcy Firm's abandoned share, it did not render a final decision and specifically determined that the constructive trust claim would be handled as a post-judgment matter:

> Defense counsel: I mean, my view is that we should take the 10% issue, and it should be a post-trial issue.
> The Court: Well, that's right. That's what I'm saying. And my point is that's exactly what we're doing….

(12/16/2019 P.M. Trial Tr. at 126:10-14, ECF No. 522; 12/17/2019 P.M. Trial Tr. at 91:4-92:6, ECF No. 516.) Indeed, the Court's jury instructions provided:

> The issue of the ten percent fee is not an issue you need to consider. In calculating damages, you are not to include the ten percent fee as monies owed the Keyes Law Firm. The Court will address the handling of the ten percent fee as a matter of law after the trial through the imposition of a constructive trust.

(12/18/2019 Trial Tr. at 13:9-14, ECF No. 436.)

Consequently, with the benefit of post-trial briefing, the Court finds that judgment must be entered in favor of Defendants on the constructive trust claim (Count VI), because

6

Plaintiff does not have any legally cognizable claim to the Bankruptcy Firm's share, thereby depriving this Court of subject matter jurisdiction over Plaintiff's claim. In short, there is no Bankruptcy Firm share to which Keyes can assert a constructive trust, and accordingly, there is a lack of both constitutional standing and prudential standing. Furthermore, this Court does not have equitable power to restructure the association agreements between Keyes, the Bankruptcy Firm, and the Defendants so as to apportion a 4 to 1 ratio of distribution.

**I.   There is no Bankruptcy Firm share to which Keyes can assert a constructive trust.**

Plaintiff's constructive trust claim alleged, "by virtue of recoveries that were received or will be received in the future by Subject Clients, the defendants have acquired … funds that belong to [Plaintiff] KLF and the Bankruptcy Firm, namely, their percentage shares of those funds as outlined in the Association Agreements." (2d Am. Compl. ¶ 117, ECF No. 274.) Further, Plaintiff alleged, "KLF and the Bankruptcy Firm have a good and equitable claim to and interest in such shares that is superior to any claim or interest than any defendant might attempt to assert." (*Id.* ¶ 118.) Keyes's assertion of a superior equitable position is not supported by the record in this case. That record reflects that the Bankruptcy Firm's referral to Keyes and Keyes's subsequent referral to the Defendants establishes that neither the Bankruptcy Firm nor Keyes ever rendered any active legal services to any of the 2,174 subject clients. Furthermore, Keyes's own witness, Marc Bern, Mr. Napoli's former law partner, testified that many of the cases were weak, that many of the cases "did not have a good outlook," and that the difficulty in litigating the cases "certainly was" draining the resources of Defendant NBRS. (12/10/2019 A.M. Trial Tr. at 60-61, ECF No. 415.)

Plaintiff Keyes bases its entitlement to the Bankruptcy Firm's 10% fee on the

association agreements' direction that Defendants remit a single check to Plaintiff representing both Plaintiff's and the Bankruptcy Firm's share, whereupon Plaintiff would send the Bankruptcy Firm its share of the fees. (*Id.* ¶¶ 116-119; *see also* July 18, 2013 Association Agreement, ECF No. 552-1.) Despite the Bankruptcy Firm's abandonment of any interest in its 10% share on December 8, 2019, Plaintiff nonetheless asserts that it is entitled to that share. This assertion is not supported by Plaintiff's own allegations in the Second Amended Complaint, the evidence in the record, or by law.

Quite simply, Plaintiff does not have a legally cognizable interest in the Bankruptcy Firm's share and cannot pursue such a claim on behalf of this third party. *See Jemal's Fairfield Farms, LLC v. Prince George's County*, 319 F. Supp. 2d 618, 623 (D. Md. 2004) ("[C]ourts generally decline to exercise jurisdiction…where the plaintiff 'rest[s] his claim to relief on the legal rights or interests of third parties.'") (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)); *Powers v. Am. Express Fin. Advisors, Inc.*, 82 F. Supp. 2d 448, 453 (D. Md. 2003) (party did not have standing to assert a constructive trust on behalf of a third party). The Bankruptcy Firm specifically disavowed its interest in the judgment in this case ("[the Bankruptcy Firm] does not want or expect any money by virtue of the Lawsuit"), disavowed any parties' right to collect fees on its behalf ("[*n*]*one of the parties or their counsel is authorized to speak for or act for the [Bankruptcy Firm]*"), and released any contractual obligation by Plaintiff to the Bankruptcy Firm ("[*the Bankruptcy Firm] hereby relieves KLF of the obligation, if any, to pay a portion of any recovery from the Lawsuit to [the Bankruptcy Firm]*"). (12/8/2019 Bankruptcy Firm Letter, ECF No. 407-2 (italics added).) Plaintiff's assertion that it has suffered a legally cognizable interest rests on the mistaken theory that Plaintiff was entitled to the Bankruptcy Firm's share all along.

8

However, "a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499.

> **II. Keyes's claim to the Bankruptcy Firm share lacks constitutional standing.**

The constitutional standing inquiry determines whether a particular litigant "is entitled to have the court decide the merits of the dispute or of particular issues." *Warth,* 422 U.S. at 498, 95 S.Ct. 2197. In order to satisfy the constitutional standing requirements, three factors must be met:

> (1) [the party] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Bishop v. Bartlett,* 575 F.3d 419, 423 (4th Cir. 2009) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)); *accord Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Individual standing is not merely a pleading requirement, but an "indispensable part of the plaintiff's case" that "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130; *Miller v. Brown,* 462 F.3d 312, 316 (4th Cir.2006) ("The party attempting to invoke federal jurisdiction bears the burden of establishing standing.").

Upon review of Plaintiff's Second Amended Complaint, this Court concludes that Plaintiff does not have constitutional standing to bring the constructive trust claim alleged in Count VI. Plaintiff Keyes has not and cannot assert any "injury in fact" related to the Bankruptcy Firm's share. Indeed, Plaintiff's allegations distinguish its share of the referral fees

from the Bankruptcy Firm's share, and Plaintiff does not allege that it is owed the Bankruptcy Firm's share. (*See* 2d Am. Compl. ¶ 117, ECF No. 274 ("defendants have acquired … funds that belong to [Plaintiff] KLF and the Bankruptcy Firm, namely, their percentage shares of those funds as outlined in the Association Agreements.").) There is simply no concrete, particularized, actual or imminent injury alleged by Plaintiff relating to the Bankruptcy Firm's share. Accordingly, Plaintiff does not have constitutional standing to assert a claim to that share.

### III. Even if there was constitutional standing, Keyes's claim lacks prudential standing.

Nor can Plaintiff assert prudential standing on behalf of the Bankruptcy Firm. As this Court has previously noted, in order to establish prudential standing: (1) "the party asserting the right must have a 'close' relationship with the third party"; and (2) "the third party must be hindered in bringing suit to vindicate its own rights." *Zaycer v. Sturm Foods, Inc.*, 896 F. Supp. 2d 399, 408 (D. Md. 2012) (citing *Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004)). The Bankruptcy Firm unequivocally gave up its right to any share of the fees in this case, and Plaintiff cannot now claim that the Bankruptcy Firm was hindered in bringing suit to vindicate any such right. Likewise, Plaintiff Keyes cannot assert this claim on behalf of the subject clients, who contractually agreed to give up 40 percent of the recovery in their respective cases. Accordingly, Plaintiff cannot rely on prudential standing to assert its claim.

Plaintiff's injury in this case clearly lies in its entitlement to the 6% of fees it is owed under the association agreements, an injury which was capable of being, and indeed was, redressed by the jury's verdict in its favor. Moreover, Plaintiff Keyes never rendered any legal

service of any kind to the subject clients.  (12/10/2019 P.M. Trial Tr. at 18-23, ECF No. 512.)[4]

Instead, the association agreements provided that all legal representation was to be performed by Defendants:

> [Defendants] have agreed to undertake representation of [subject client]. [Defendants] will be responsible for every aspect of representation, including filing a complaint in a timely manner, propounding and responding to discovery, deposing plaintiff, deposing fact witnesses, conducting medical and expert work-up, handling motions practice, and, if applicable, trying the case and handling any post-trial matters.

(July 18, 2013 Association Agreement, ECF No. 552-1.)

### IV. Keyes's claim to the Bankruptcy Firm's share lacks constitutional standing in any declaratory judgment claim.

Keyes's effort for a declaratory judgment claim as to a constructive trust is essentially predicated on "this Court's determination of the parties' rights."  (Pl.'s Opp'n at 20, ECF No. 552 (SEALED).)  In short, Keyes alternatively requests that this Court apportion what would have been the Bankruptcy Firm's 10% share on a "ratio proportional to" the original shares of the Defendants and Keyes.  (Pl.'s Opp'n at 2, ECF No. 552 (SEALED).)  While this Court had discussed with counsel the potentiality of a 4:1 ratio, this Court does not have the jurisdiction to impose such a ratio.  Furthermore, equitable principles do not support it.  The original association agreements between the Bankruptcy Firm, Keyes, and the Defendants did not specifically provide for an 80% and 20% distribution of any and all contingency fees. Rather, it specifically provided for a 40% contingency fee with Keyes being entitled to the agreed-upon 6%.

---

[4] At trial, Mary Keyes testified that she has not tried a case since she opened her law firm in early 2009. (12/10/2019 P.M. Trial Tr. at 19:25-20:2, ECF No. 512.)

For the same reasons that Plaintiff lacks standing as to the Bankruptcy Firm's share under a constructive trust, so too it lacks standing to determine its rights to the Bankruptcy Firm's share under a declaratory judgment claim.[5] *See O'Bannon v. Friedman's, Inc.*, 437 F. Supp. 2d 490, 494 (D. Md. 2006) ("The test for whether a case or controversy exists is whether the dispute 'is definite and concrete, touching the legal relations of parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'") (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-42, 57 S. Ct. 461, 81 L.Ed. 617 (1937)).  In addition, Plaintiff's declaratory judgment claim, which alleged that Defendants failed "to remit to KLF its contractual share of the settlements recovered by the Subject Clients" (2d Am. Compl. ¶ 90, ECF No. 274), was resolved when the jury awarded damages to Plaintiff on its breach of contract claim, based on the same allegations as its declaratory judgment claim.  *See Dorset Indus. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395 (E.D.N.Y. 2012) ("Where…the same conduct underlies the Plaintiff's causes of action for declaratory judgment and breach of contract, courts generally dismiss the declaratory judgment claim as duplicative in favor of 'the better or most effective remedy' of 'the underlying litigation itself'") (citations omitted).

In sum, for the reasons stated above, the Court finds that Plaintiff Keyes lacks standing to pursue the Bankruptcy Firm's share of the settlement recoveries, and judgment is entered in favor of the Defendants on the constructive trust claim (Count VI).

---

[5] The Defendants have taken exception to Keyes's claim for declaratory judgment with respect to the constructive trust in light of the briefing schedule established by the Court.  (*See* Defs.' Reply at 12 n.2, ECF No. 556 (SEALED).)  In light of this Court's rejection of this theory, no further briefing is required.

## CONCLUSION

For the reasons stated above, it is HEREBY ORDERED this 14th day of September, 2020 that:

1. Defendants' Motion for Judgment as a Matter of Law on Count VI – Constructive Trust (ECF No. 550) is GRANTED;

2. JUDGMENT IS ENTERED in favor of Defendants on Count VI – Constructive Trust, and against Plaintiff Keyes Law Firm;

3. An Amended Judgment shall be prepared; and

4. The Clerk of this Court shall transmit copies of this Order to the parties.


_____/s/_____
Richard D. Bennett
United States District Judge