IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KEYES LAW FIRM, LLC, | * | |
| Plaintiff, | * | |
| vs. | * | Civil Action No. JRR-17-2972 |
| NAPOLI BERN RIPKA SHKOLNIK, LLP, *et al.*, | * | |
| Defendants. | * | |

## REPORT AND RECOMMENDATION

On March 20, 2023, this matter was referred to me for a Report and Recommendation regarding ECF No. 606, Motion for Attorneys' fees. ECF No. 627. Judge Bennett presided over the trial. *See generally* Docket. The case was then transferred to Judge Rubin on December 8, 2022. *Id.* I have reviewed the docket entries, motions and responses, previous orders of the Court, and pertinent references to the transcripts from trial. On May 4, 2023, a hearing was held on the record where each party had an opportunity to present argument on the pending motions. ECF No. 633. I incorporate the record of the May 4, 2023 hearing as part of this Report and Recommendation. At the conclusion of the hearing, I advised counsel that I would issue a written opinion after reviewing all of the evidence.

Plaintiff Keyes Law Firm ("KLF") has moved this Court to award fees and costs resulting from misconduct by Defendants (referred to collectively as "Defendants", "Napoli Defendants" or "Napoli"). ECF Nos. 606, 62. KLF seeks fees and costs incurred after the Show Cause Hearing conducted on May 9, 2019 (ECF No. 191) through the present for Napoli's bad faith litigation conduct. ECF No. 620 at 1. What is important to note from the start is that the Court, at various points in the litigation, indicated that it would award fees to Plaintiff (Tr. 12/11/19 PM at 30;

1

12/16/19 PM at 131; 12/17/19 PM at 97)[1]. In reviewing this case, it is my opinion that the Defendants were entitled to a hearing on the pending motions as they were for sanctions, not for fees by a prevailing party. ECF No. 632. The Napoli "Legacy Defendants" joined in the motion and were represented by independent counsel who was present at the hearing. ECF Nos. 629, 630. At oral argument, the Legacy Defendants submitted on the argument presented by the Napoli Defendants.

No fees are sought for typical discovery, expert fees for Charles Mullins, any work supporting the initial Bates White damages theory, or post trial briefing or work ordinarily incurred in heavily contested litigation. ECF No. 606 at 8-9. The fees sought by Plaintiff to be awarded in this case are all related to Napoli's misconduct within the time frame described above. ECF No. 620 at 1.

The bottom line here is that Napoli never once complied with the Court's Order to provide a full accounting of the 2,174 files in native format, despite multiple Orders from the Court, motions hearings on discovery, and show cause hearings. When one looks at the whole picture here, if Napoli would have complied, much of this litigation would have been unnecessary. After hearing from counsel, I am more convinced that the failure to comply with this Court's orders led Defendants down the path of misconduct. The cover up, as usual, is worse than the crime. A nine-day trial would have been reduced to no more than the five days requested by Plaintiff and Defendants. At its core, this case involved a breach of contract requiring nothing more than an accounting of the monies owed to Plaintiff. This motion concentrates on the very limited issue of fees incurred by Napoli's actions and inactions characterized as misconduct.

---

[1] Judge Bennett stated repeatedly he would award "fees". Judge Bennett did not limit those fees to just the misconduct fees sought here by Plaintiff. Plaintiff has moved for a more conservative category of fees, not seeking all the fees incurred as a prevailing party in this litigation.

## FACTUAL BACKGROUND

KLF filed this action against Napoli and the myriad of Napoli alter ego entities along with the Legacy Defendants on October 10, 2017, alleging Napoli and its entities owed a duty to account for money due to KLF under the Association Agreements between KLF and Napoli (Count I). ECF No. 1. KLF referred asbestos litigation clients to Napoli under the Association Agreements (or "Agreements") and the parties agreed to share portions of the settlements obtained on the 2,174 cases referred. *Id.* In Count II, KLF requested a declaratory judgment that Napoli remit monies due to KLF under the Agreements. *Id.* Count III alleged a breach of the Agreements against NBRS and Count IV alleged a breach of the Agreements against all Defendants except NBRS. *Id.* In Count V, KLF alleged unjust enrichment claims against all Napoli Defendants. *Id.* In Count VI, KLF prayed the Court charge a constructive trust against all Defendants. *Id.* Any jurist seeing the Complaint against eighteen versions of (excepting the Bern aspects later settled and dismissed) Napoli would expect a protracted litigation. However, what played out over the now five plus years of litigation started with the refusal by Napoli to provide a fair accounting of the debts owed under the 2,174 Agreements, a failure to pay KLF their fair share, and a series of actions by Defendants characterized as misconduct in these proceedings.

A First Amended Complaint was filed by KLF on February 13, 2019. ECF No. 145. KLF deleted one Defendant, Bern, Ripka, LLP, added much more substance to their factual basis, and added a Count for Negligence against Napoli, Bern, and NBRS. *Id.* The basis of the lawsuit remained that Napoli failed to provide a proper accounting of the monies regarding the 2,174 claims referred and that Napoli refused to pay monies owed. *Id.*

To say there was a lot of activity in this case is like saying Tom Brady kind of played football. There are 635 docket entries to date. The normally expected motions were filed, motion

to dismiss (ECF No. 26) and motion for judgment on the pleadings (ECF Nos. 116, 117) and the case moved forward through 2018. On February 28, 2019, the Court entered a Letter Order stating that Napoli shall produce ESI with metadata in a searchable format. ECF No. 152. Notably, on April 18, 2019, the Court entered a Memorandum Opinion and Order requiring Napoli to fully comply with ECF No. 152 or appear in person for a Contempt proceeding on May 2, 2019. ECF No. 186. I subsequently held a hearing on June 26, 2019, ordering Defendants to comply with the previous discovery orders. ECF Nos. 207, 208. The record is clear not only from the docket entries, but also from the trial and other related hearings, that Defendants never complied with this Court's orders to provide the accounting data in native format to Plaintiffs. Defendants have flaunted the authority of this Court and continue to do so in their opposition to the fees requested here. *See* ECF No. 614. Three prior firms represented Napoli before Offit Kurman entered their appearance in August 2019, about three months before trial. *See generally* Docket; Tr. August 25, 2020 at 24. This switcheroo of counsel, and the bringing on of new counsel less than 4 months from trial, is alleged by Plaintiff to be part of the litigation strategy of Defendants.

## DISCUSSION

This Court's power to sanction is derived from several distinct authorities. First, under 28 U.S.C. § 1927, the Court has the authority to sanction counsel who "unreasonably and vexatiously" multiply the proceedings and may require that the counsel "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. §1927. While this section only applies to sanctioning attorneys or other persons admitted to conduct cases, the courts have inherent power to sanction, in order to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases". *Goodyear Tire and Rubber Co., v. Haeger*, 581 U.S. 101, 107-08 (2017). That inherent power to sanction applies to parties as well as counsel. *See*

skipped

*generally Id.* "There is, therefore, nothing in the other sanctioning mechanisms or prior cases interpreting them that warrants a conclusion that a federal court may not, as a matter of law, resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct." *Chambers v. NASCO, Inc.* 501 U.S. 32, 50 (1991). In addition, Federal Rule of Civil Procedure 37 also allows the Court to sanction misconduct in a party's failure to comply with differing aspects of discovery. Fed. R. Civ. P. 37.

Notably, "[t]here is no rule or required procedure for assessing a litigant's alleged misconduct, and a request for sanctions can arise in a variety of circumstances. The bedrock fundamental principle, however, is that a litigant must have notice and an opportunity to be heard before sanctions are imposed." *Dewitt v. Ritz*, No. DKC-18-3202, 2021 WL 915146, at *3 (D.Md. March 10, 2021) (citing *Chambers*, 501 U.S. at 50). In this case, the issue of sanctions was fully briefed and all parties received an opportunity to be heard.

In order to award sanctions for litigation abuse, a court must find by clear and convincing evidence—as opposed to a mere preponderance of the evidence—that the non-moving party's actions constituted misconduct. *See, e.g., DeWitt*, 2021 WL 915146, at *4; *Glynn v. EDO Corp.*, JMF-07-01660, 2010 WL 3294347, at *2 (D.Md. Aug. 20, 2010). In *Glynn*, Judge J. Frederick Motz explained: "Whether it is sought under the Federal Rules of Civil Procedure or pursuant to this Court's inherent power, the precise burden of proof in a motion for sanctions is unclear in the Fourth Circuit. However, proving misconduct occurred by 'clear and convincing' evidence, as opposed to by a mere preponderance, certainly suffices." *See also Lahiri v. Univ. Music and Video Distrib. Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010) ("The burden of proof issue need not be resolved here because the district court's bad faith finding is supported by clear and convincing evidence." (internal citations omitted)); *Shepherd v. Am. Broad. Cos., Inc.*, 62 F.3d 1469, 1476-78

(D.C. Cir. 1995) (citing several other circuits in holding that the "clear and convincing" standard is required to impose default judgment, whereas preponderance is the standard for imposing less dramatic sanctions); *Balcar v. Bell & Assoc., LLC*, 295 F.Supp.2d 635, 640-41 (N.D.W.Va. 2003) ("Because the court's inherent power to sanction should be exercised with caution and discretion, some circuits have held that clear and convincing evidence of bad faith and vexatious behavior is required for a court to exercise its inherent authority to sanction. Although the Fourth Circuit appears not to have addressed the issue, this Court believes it, too, would adopt the clear and convincing evidence standard with regard to the Court's inherent power to sanction." (internal citations omitted)); *Johnson v. Balt. City Police Dept.*, No. ELH-19-0698, 2022 WL 9976525, at *35 (D.Md. Oct. 14, 2022).

**Defendants' Opposition to Award of Fees for Misconduct**

It appears Defendants here in opposition to the motion adopted the same strategy as they deployed in discovery. ECF No. 614. Napoli here attempts to shift the focus of the motion—an appeal for fees related to misconduct—to simply arguing that Plaintiff is not entitled to fees because: (1) it failed to achieve success in the underlying litigation; (2) the offer to settle was close to the judgment; and (3) Plaintiff, not Defendants, caused all of the delay and additional litigation. *Id.* As with the discovery gamesmanship played by Defendants, it is necessary to peel away these arguments to look at the actual misconduct which caused the protracted litigation. Napoli and all of its counsel agreed that the trial should conclude in five days. ECF Nos. 147, 152, 203, 204. The trial concluded on the ninth day. ECF No. 430. Bern settled before trial and was dismissed. ECF No. 396. KLF was awarded a Plaintiff's verdict by the jury against Napoli and the entities of $1,502,882.00. ECF No. 446 (under seal). Ultimately and after the appeal, the Court reduced the

verdict to $1,011,639.23 for trial judgment including interest and $333,801.78 as judgment for the sanctions award including interest. ECF No. 600-1.

**Napoli Arguments Easily Dismissed**

First and foremost, I find no credibility in Defendants' arguments set forth in their Opposition that this Court lacks authority to sanction. To state that this Court lacks authority to impose sanctions in this case is not just legally incorrect, it intentionally ignores the law. Defendants point to Second Circuit decisions where sanctions were found to be unwarranted based on other factors and not misconduct. ECF No. 614 at 8-9. Defendants here ignore Supreme Court decisions, Fourth Circuit law, and the statutory authority that forms the authority of the Court to conduct its business.

In the alternative, Defendants, in their briefing, argue the fees requested are not reasonable. Instead of arguing the reasonableness of the fee petition under the *Johnson* factors, Defendants begin their journey along the wrong road by arguing both in their briefings and at the hearing that: (1) Plaintiff rejected a reasonable settlement offer; (2) Plaintiff's lack of success warrants denial of fees; and (3) the initial Bates White damages theory was unsupported. ECF No. 614. Not only are these arguments irrelevant, they are simply another means of unnecessary litigation. Defendants here completely ignore the fact that this motion is about sanctioning the *misconduct* of Defendants from May 10, 2019 to the present. There is no need for the Court to address the specious arguments regarding rejecting settlements and the success of the Plaintiff at trial. Plaintiff is, further, not seeking Bates White damages so there is no need to address that issue either. ECF No. 620 at 3.

**The Court's Power to Sanction Pursuant to Federal Rule of Civil Procedure 37**

**Generally**

There is no dispute, as I confirmed with Napoli counsel at oral argument, that Napoli never complied with the Court's Orders to provide a complete accounting of the 2,174 cases where Napoli and KLF had contracted for fee sharing. It is my opinion after reviewing all the evidence, that Napoli knowingly and intentionally violated the Orders of this Court. I also find that, had Napoli simply complied, much of the misconduct that occurred could have been avoided. The Napoli misconduct flowed from, and was intertwined with, the hiding of the proper accounting Ordered by the Court. In addition to violating the Orders of this Court, Napoli engaged in a systematic course of conduct intended to harass KLF, ensure KLF would never receive a fair accounting, and prolong and protract this litigation which otherwise would have been a simple breach of contract dispute, even if circumstances would have extended the trial beyond five days.

With respect to the failure to provide the accounting to KLF, Plaintiff had to scramble to piece together data to support its damages. For example, Plaintiff had to follow the procedures set forth in the Local Rules regarding discovery disputes. Loc. R. 104 (D.Md. 2021). In an attempt to obtain discovery, and in particular, the accounting, Plaintiff made informal requests, conducted meet and confers, and ultimately had to file motions to compel. On February 8, 2019, this Court Ordered Napoli to produce ESI in searchable format with metadata. ECF No. 152. Napoli had dumped nearly three million documents in non-searchable format, which KLF asserted was done so that Napoli could obtain an advantage in discovery. *Id.* This Court found that providing these documents in non-searchable format violated Federal Rule of Civil Procedure 34, which requires that ESI be provided in a form or forms in which it is ordinarily maintained or reasonably usable form or forms. *Id.*; Fed.R.Civ.P. 34(b)(2)(E)(ii).

8

KLF subsequently had to return to the Court in an effort to have Napoli comply with ECF No. 152. ECF No. 176. The docket entries show several back and forth communications with the Court regarding Napoli's failure to comply with ECF No. 152. Ultimately, on April 18, 2019, the Court issued an order to show cause why Napoli should not be in contempt for failure to comply with the Court's Order—ECF No. 152. ECF No. 186. As would be the pattern of conduct by Napoli, prior to ECF No. 186, counsel Rosenberg and Martin withdrew their appearance. ECF No. 185. The Court conducted a show cause hearing and, on the record, awarded sanctions against Napoli for the discovery violations and failure to comply with the Court's Order. ECF Nos. 191; 223.

On May 9, 2019, the Court referred discovery and all related scheduling to me. ECF No. 190. After a telephone conference with counsel, I conducted a discovery dispute hearing on June 26, 2019. ECF Nos. 202, 207. I entered an Order compelling Napoli to comply with discovery as previously Ordered by Judge Bennett as well as disclosure of other discovery, including tax returns. ECF No. 208. Napoli's counsel stated on the record that Mr. Napoli heard the Court "loud and clear" and got the message. Subsequently, counsel for Napoli filed a motion to withdraw on August 28, 2019, which was granted the same day. ECF No. 213, 216.

Both in briefing and at oral argument, KLF presented evidence of the bad faith conduct in which Napoli engaged. KLF detailed the efforts that were required to pursue their case as a result of Napoli's failure to provide an accounting. ECF No. 606 at 15-23. I find by clear and convincing evidence that these categories of expenses were directly related to and resulted from the discovery violations committed by Napoli. The Court adopts the evidence set forth by KLF but will make an independent determination of those costs and attorneys' fees sought for these violations.

**Costs sought for Mr. Evans**

The costs sought for Mr. Evans are worth additional analysis. At oral argument, Napoli counsel presented argument that Mr. Evans would have had to testify as an expert with or without a full accounting, so the fees attributed to him should be reduced or eliminated. Plaintiff's counsel responded that there would have been no need for Mr. Evans' costs and expenses had Napoli simply complied with the Court's discovery order. Plaintiff would have simply employed a forensic CPA to testify, who would have had a lower hourly rate and been able to complete the job in significantly fewer hours. Napoli's counsel argued that Mr. Evans' fees were excessive. Plaintiff's counsel pointed out that Mr. Evans was necessary because he had to actually write a software program designed to extract the necessary data from the boatload of last-minute document dumps by Napoli and additional discovery conducted by Plaintiff in order to create the data Napoli refused to disclose in order to assess the damages incurred. All of that work by Mr. Evans could have been avoided had Napoli complied with the Court ordered discovery. This Court had also previously awarded the requested hourly rate of Mr. Evans in the granting of the first sanction motion by Judge Bennett, which was affirmed by the Fourth Circuit. *See* ECF Nos. 223, 596.

I find by clear and convincing evidence that Napoli (and all Defendants) knowingly, willfully, and intentionally violated the Orders of this Court and appropriate sanctions are available under Rule 37 for: (1) failure to obey a discovery order and (2) failure to disclose or supplement discovery. Fed. R. Civ. P. 37 (b)(2)(C); Fed. R. Civ. P. 37 (c)(1)(A).

**The Court's Inherent Power to Sanction**

**The New York Litigation**

Defendants posit that this Court does not have the authority to sanction a party for misconduct that occurred in New York. ECF No. 614 at 19-24. Plaintiff is seeking sanctions for

Defendants' actions in filing two frivolous lawsuits in New York. In the first complaint, filed January 15, 2019 (amid the turmoil of discovery), Defendant NKB&A sued KLF and Ms. Keyes alleging, among other things, that the action here in Maryland was an abuse of process. ECF No. 606 at 37. On February 14, 2019, just before the filing of KLF's Answer, Napoli voluntarily withdrew the complaint. *Id.* Five days later, on February 19, 2019, another Napoli entity, NL, filed a second complaint in state court which Plaintiff removed to the United States District Court for the Eastern District of New York. This second complaint was identical to the first complaint which they voluntarily dismissed except that it named a different Napoli Plaintiff and included a Napoli entity as a defendant. *Id.* The jury returned a verdict in this District in this case on December 23, 2023, while the second case was pending in EDNY. ECF No. 445. On December 31, 2019, NL, the Napoli entity, filed a notice of dismissal of the EDNY case and it was dismissed on January 2, 2020. *Id.*

With respect to the New York litigation, I agree with Plaintiff. It is obvious that Defendants NKB&A and NL filed these actions in state court in New York to disrupt the litigation process here in Maryland and to harass Plaintiff, forcing it to incur additional costs and expenses. On December 16, 2019, Ms. Napoli testified at trial regarding the New York actions:

> **I sued her for suing Napoli Law**, and I sued Napoli Bern
> because Napoli Law should not be involved in this. Had nothing
> to do with her lawsuits. Nothing to do with it.
> Q. And you wanted an order that she be – you wanted her to
> be ordered to dismiss this lawsuit. Right?
> A. We moved to dismiss.

Trial Tr. 12/16/19 at 88 (emphasis added).

While Ms. Napoli testified that the New York actions had nothing to do with Maryland, the relief requested in the state court was a lame attempt to have a state court enjoin an action in federal court, a legal proposition that a first-year constitutional law student would easily find

deficient, much less the well-seasoned Napoli team. Ms. Napoli stated clearly that she sued Plaintiff KLF for suing Napoli law. She further claimed she sued Napoli Bern (who was included as a Defendant, an alter ego of Napoli) because Napoli law had nothing to do with the alleged debts. *Id.* The Court finds incredible her claim that the filing of the New York lawsuits had nothing to do with the Maryland case when she admitted she sued KLF because KLF sued her. There is no logical justification for these two lawsuits other than they were contrived to divert KLF from the Maryland case and drag KLF into more litigation and costs. The fact that she sued one of her own entities makes no sense either, other than using that trick to defeat diversity jurisdiction in federal court. *See* 28 U.S.C. § 1332. It is also noteworthy that the same parties represented the Plaintiff, Ms. Napoli herself, and the Defendant NKB&A and NL. One cannot sue themselves and represent both parties. These New York lawsuits are an excellent example of the outrageous conduct of Defendants.

The issue presented here is whether this Court can sanction Napoli for conduct occurring in another court, the state court of New York and ultimately EDNY. A court may impose sanctions even when the misconduct occurs before another tribunal. *See Johnson v. Balt. City Police Dept.*, No. ELH-19-0698, 2022 WL 9976525, at *35 (D.Md. Oct. 14, 2022) ("Of import here, a court may impose sanctions even when the misconduct occurred before another tribunal, rather than in its own case.") (citing *Chambers*, 501 U.S. at 32). In *Chambers*, the Supreme Court observed:

> Chambers challenges the District Court's imposition of sanctions for conduct before other tribunals, including the FCC, the Court of Appeals, and this Court, asserting that a court may sanction only conduct occurring in its presence. Our cases are to the contrary, however. As long as a party receives an appropriate hearing, as did Chambers, *see* 124 F.R.D. at 141, n.11, the party may be sanctioned for abuses of process occurring beyond the courtroom, such as disobeying the court's orders.

*Chambers*, 501 U.S. at 57.

12

I agree with Plaintiff and there is ample authority to support sanctions here in Maryland for the conduct that occurred in New York. Courts have considered and imposed sanctions when the misconduct occurred primarily before other tribunals. In *Dewitt v. Ritz*, the Court found persuasive the court's analysis in *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, No. 2:18-CV-01479-KOB, 2020 WL 2308319, at *6 (N.D. Ala. May 8, 2020), which explained that Courts may consider "behavior in other cases that share[] *obvious linkages* to its own case, *e.g.*, the cases were consolidated or *involved the same parties and issues*." (Emphasis added). In this case, the evidence completely supports the "obvious linkage" of the New York cases to this case. The very existence of this case was the basis of the frivolous and unsupportable abuse of process claims by Napoli. There is no other logical explanation for Napoli filing the New York actions other than to harass Plaintiff, divert Plaintiff from the Maryland action, and cause Plaintiff to incur additional time and expenses. That analysis is further supported by the fact that Defendants essentially sat on both sides of the "v". "I sued her for suing Napoli law…" Trial Tr. 12/16/19 at 88.

At oral argument, Defendants argued that since the New York actions were filed prior to the May 19, 2022 show cause hearing, the Court should not consider the alleged misconduct. I disagree. The conduct that started in January 2019 and continued into the May 19, 2022 time period persisted until the dismissal of the action in EDNY on December 31, 202—which was post-verdict in this case. Although the conduct started before May 19, 2022 with the filing of the complaints, it was fully intended to disrupt Plaintiff in its litigation efforts throughout those golden hours of litigation preparation, discovery, and even trial. In essence, because the conduct persisted, I find that it is well within the time period sought for sanctions.

13

I find by clear and convincing evidence that, consistent with the inherent power of the Court to award sanctions, Plaintiff is entitled to sanctions for the misconduct of Napoli Defendants in filing the New York actions.

**The Court's Power to Award Sanctions Under 28 U.S.C. § 1927**

**Generally**

Federal Courts may sanction counsel who multiply the proceedings "unreasonably and vexatiously" and may require that person to satisfy excess costs, expenses, and attorneys' fees incurred because of that conduct. 28 U.S.C. §1927. As stated previously, the statute allows sanctions against counsel, not parties. In this case, it is somewhat unclear whether Plaintiff is asking the Court to invoke its powers under 28 U.S.C. §1927. However, it is clear that KLF is not asking for sanctions against the law firms that represented Defendants. At the hearing, counsel for KLF confirmed that none of this misconduct is due to current or past retained counsel. ECF No. 633. To the extent that Mr. Napoli, Ms. Napoli, or any of the Defendant entities acted as counsel, the Court would have the power to sanction pursuant to 28 U.S.C. §1927. Based upon the record, however, there is insufficient evidence to find by clear and convincing evidence that any of the Defendants contributed to the misconduct while acting in a counsel capacity as is required to award fees under 28 U.S.C. §1927.

**Request For Attorneys' Fees for Appeal**

Plaintiff has requested this Court grant attorneys' fees and costs resulting from the Defendants' appeal. ECF No. 606 at 28. The comments of the Fourth Circuit in its Opinion suggest strongly that the 21 points of appeal were frivolous, all but the rate for post judgment interest:

> Faced with an appeal asserting thirteen grounds for reversal, Judge Craven of our Court once remarked that "[s]o many points of error suggest that none are valid." *United States v. Sawyers*, 423 F.2d 1335, 1338 (4th Cir. 1970). His observation applies with equal force here. The defendants offer twenty-one grounds for reversal and KLF another three. After

14

carefully considering each one, we conclude that, with one minor exception, they all lack merit.

ECF No. 596. Despite this observation, Plaintiff has presented no authority to support a district court imposing sanctions for conduct occurring in the appellate court. The Rules of Appellate Procedure provide for damages and costs related to frivolous appeals. Fed. R. App. P. 38. Plaintiff has not chosen to pursue relief available in the Fourth Circuit but asks this Court to impose sanctions. I decline to do so. The district court is divested of jurisdiction once an appeal is filed. The proper remedy was to seek relief under Appellate Rule 38.

### The Court's Loadstar Analysis

Having found that Defendants committed litigation misconduct, the Court must determine the appropriate award. When determining the proper amount for sanctions, "[t]he court's fundamental job is to determine whether a given legal fee . . . would or would not have been incurred in the absence of the sanctioned conduct." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 110 (2017). In doing so, however, this Court "need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 839 (2011). Rather "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Id.* Therefore, "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

The Court will begin by calculating the award of attorneys' fees. To do so, the Court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate. *Grissom v. The Mills Corp.*, 549 F.3d 313, 230 (4th Cir. 2008). In deciding what constitutes a "reasonable" number or hours and a "reasonable rate" under this method, courts look to the following 12 factors:

15

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)).

After determining the lodestar figure, the "court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Grissom*, 549 F.3d at 321 (quoting *Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002)). Finally, "[o]nce the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (quoting *Grissom*, 549 F.3d at 321); *Braxton v. Eldorado Lounge, Inc.*, No. BPG-15-3661, 2018 WL 6192365, at *2 (D.Md. Nov. 28, 2018).

At the hearing, Napoli did not object to the hourly rate of Plaintiff's various counsel. The Court notes that the hourly rates are mostly in compliance with Appendix B of the Local Rules. Loc. R. App. B (D.Md. 2021). While Appendix B is not binding upon the Court, I find that the uncontested hourly rates are reasonable. *See Carrera v. EMD Sales, Inc.*, No. JKB-17-3066, 2021 WL 3856287, at *4-5 (D.Md. Aug. 27, 2021).

Plaintiff has outlined the "misconduct" that occurred after the Show Cause Hearing conducted by Judge Bennett on May 9, 2019 (ECF No. 191). ECF No. 293-3. The Exhibit attached to the motion, however, does not include conduct after October 24, 2019 through trial. ECF No.

606 at 9. As stated before, I conducted a hearing on the discovery disputes on June 26, 2019. ECF No. 207. The most glaring misconduct that occurred all throughout this case was, simply, the failure of Defendant to provide a full accounting of the monies from the 2,174 settlements. Even at the hearing on May 4, 2023, Defendant's counsel admitted that a full accounting of those files was never provided in discovery. Plaintiff also argued that some of the more glaring acts of misconduct were:

> -the failure to provide an accounting at any stage during the litigation and the intentional non-compliance with the Orders of this Court;
>
> -the failure to account required Plaintiff to attempt to recreate an accounting by hiring an expert (Andrew Evans, CFA) to write a program to extract the data from the voluminous document dumps that were not categorized or analyzed by Defendants prior to disclosure and required the discovery of third parties including asbestos clients and their counsel;
>
> -the last-minute post discovery disclosure of thousands of documents during summary judgment proceedings and again before trial, including 13 boxes of mismarked bates-stamped documents and new spreadsheets requiring expert testimony three business days before trial;
>
> - the last-minute disclosure of 500 checks totaling $322,000.00 on the Friday evening before the trial scheduled to begin on Monday;
>
> - the alleging of a set-off defense that required Plaintiff to obtain an expert witness (Martin Himeles, Esq.) to testify about the legitimacy of Defendants' billing practices. Defendants later abandoned this defense;
>
> - the overall bad conduct evidenced in the docket entries that show a pattern of harassing Plaintiff, failure of discovery, filing of frivolous motions, and four changes of counsel during the litigation; and,
>
> - filing of the frivolous New York actions to distract and harass Plaintiff during discovery and then abandoning the actions after the verdict in this case.

I find by clear and convincing evidence that all of this conduct was intentional misconduct strategically devised to harass Plaintiff, waste the time and resources of this Court, and blatantly defy the Orders of this Court. Defendants do not deny the allegations, but set forth defenses to the

conduct, which, as stated above, are either irrelevant, non-responsive, or simply wrong, with the few exceptions noted below.

In general, as the Court did in the prior award, I adopt the arguments set forth by Plaintiff with respect to the *Johnson* factors, with some specific comments. With respect to the first factor, the time and labor expended, it is clear that Defendants' conduct caused a significant increase in the amount of litigation hours and ultimately nearly doubled the agreed upon five days for trial. Plaintiff had to endure a never-ending barrage of meaningless and intentionally disorganized discovery dumps and brutal trial tactics that are well summarized in Plaintiff's motion and oral argument.

Also noteworthy with respect to factors two and three, Defendants continually litigated novel and difficult questions, such as the filing of the state actions in New York and the aggressive defense of defying Court Orders to produce the accounting and then dumping boxes of improperly marked and irrelevant documents on Plaintiff at critical times in the litigation. Those activities required experienced counsel, well versed in dealing with aggressive litigators who committed chronic violations and participated in unethical conduct (e.g., representing both Plaintiff and Defendant in the New York actions).

With respect to factor twelve, Plaintiff points out that there was a fee award in a similar case litigated by Plaintiff's counsel, *Schlossberg v. Abell,* Bankr. D.Md. Case No. 13-13947 (Ch. 11), Adv. Proc. No. 14-00417 (ECF No. 443) (July 15, 2016). I find that even more relevant is the prior award in this case. ECF No. 223. On September 6, 2019, this Court awarded $316,873.12 to Plaintiff, jointly and severally against the Napoli Defendants. *Id.* In that ruling, the Court found that 10 of the 12 factors under *Johnson* were satisfied and the attorneys' fees and costs were reasonable as requested by Plaintiff. *Id.* The point here, is that the misconduct of Defendants did

not only persist, but became amped up as the December trial date approached. Defendants' strategy to make this litigation as difficult as possible coupled with the application of abusive litigation tactics even after being sanctioned by this Court to the tune of $316,873.12 plus interest clearly merits an award of additional sanctions. I am not persuaded by counsel's argument at oral argument that Defendants have already been sanctioned and all the monies owed to Plaintiff have been paid. Again, this motion concerns *only* the conduct occurring after the May 9, 2019 show cause hearing.

**The Award**

After reviewing all the pleadings, docket entries and motions in this case, I find by clear and convincing evidence that:

(1) Defendants did engage in the misconduct alleged by Plaintiff from May 9, 2019 through the conclusion of trial in retaliation for Plaintiff litigating her claim and, as a result, Plaintiff incurred damages of excessive attorneys' fees and costs;

(2) This Court has the power to assess fees and costs pursuant to Fed. R. Civ. P. 37(b)(2)(C) and the inherent power of the Court to "manage [it's] own affairs so as to achieve the orderly and expeditious disposition of cases". *Goodyear Tire and Rubber Co., v. Haeger*, 581 U.S. 101, 107-08 (2017);

(3) The attorneys' fees requested by Plaintiff are consistent with the Loc. R. App. B. (D.Md. 2021) and are unchallenged by Defendants;

(4) Plaintiff is not entitled to attorneys' fees and costs resulting from the appeal. Once the appeal was filed, this Court was divested of jurisdiction and Plaintiff failed to avail itself of Rule 38 of the Federal Rules of Appellate Procedure. Fed. R. App. P. 38;

(5) Fees and Costs Based upon Defendant's Failure to Provide an Accounting: Attorneys' fees of $145,131,50 and Costs of $459,580.65;

Fees and Costs Incurred by Bad-Faith Setoff Defense:

Attorneys' fees of $40,229.54 and costs of $53,470.38;

Fees and Costs for Bad Faith New York Actions:

Attorneys' fees of $72,541.50 and costs of $1,426.18;

Fees and Costs for Dealing with Defendants' Bad Faith Tactics:

Attorneys' fees of $179,917.00 and costs of $98,576.23;

(6) The Court does not award the additional fees and costs for unnecessary trial preparation and trial time. The misconduct that occurred during the trial preparation time is sufficiently captured in the other categories awarded above. I also find that separating out the additional trial preparation from normal trial preparation does not meet the clear and convincing standard to award fees.

## CONCLUSION

Therefore, I recommend the Court adopt the findings in this Report and Recommendation and award the total amount of $437,819.54 in attorneys' fees and $613,053.44 in costs for a total of $1,050,872.98. I further recommend the judgment is to be entered as to each responding Defendant jointly and severally at the interest rate established by the Fourth Circuit in the opinion issued by the Court, ECF No. 596.

Date: 22 May 2023

A. David Copperthite
United States Magistrate Judge